195 F.3d 819 (6th Cir. 1999)
 UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
REAL PROPERTY AND ALL FURNISHINGS KNOWN AS BRIDWELL'S GROCERY AND VIDEO, U.S. ROUTE 52, FRIENDSHIP, SCIOTO COUNTY, OHIO, WITH ALL APPURTENACES, IMPROVEMENTS AND ATTACHMENTS THEREON, DEFENDANT,
BART JOURNEY, APPELLANT.
 No. 98-3999
 U.S. Court of Appeals, Sixth Circuit
 Argued: September 21, 1999
Decided and Filed: November 04, 1999
 
 Appeal from the United States District Court for the Southern District of Ohio at Cincinnati. No. 95-00001--Sandra S. Beckwith, District Judge.
 Harry R. Reinhart (argued and briefed), Reinhart Law Office, Columbus, Ohio, for Appellant.
 Kathleen M. Brinkman (argued and briefed), Office of the U.S. Attorney, Cincinnati, Ohio, for Plaintiff-Appellee.
 Before: Merritt and Clay, Circuit Judges; Quist, District Judge.*
 OPINION
 Merritt, Circuit Judge.
 
 
 1
 Pursuant to 18 U.S.C. § 1955(d), authorizing forfeiture of property used for gambling, the district court forfeited a building used as a grocery store in Friendship, Ohio, because the back of the building was being used to conduct an illegal bookmaking operation. The district court directed any person or entity having an interest in Bridwell's Grocery to file a timely claim with the district court clerk, and further directed any claimant to file a timely Answer to the United States' Complaint that instigated the forfeiture. Bart Journey, who held registered equity title to the property under an Ohio land installment contract, timely filed a Claim, pro se, to the property on the grounds of innocent ownership and lack of knowledge of the gambling operation. He failed, however, to file a timely Answer as directed by the district court. Accordingly, upon request of the United States, the district court clerk issued an Entry of Default as to Journey's claim. Two months later, and now represented by counsel, Journey sought relief from the default entry pursuant to Rule 55(c) of the Federal Rules of Civil Procedure.[1]
 
 
 2
 This court has recognized that it is important to distinguish between an entry of default and a default judgment.[2] The burden for setting aside a default judgment is greater than for setting aside an entry of default, and this court has held that "a stricter standard of review applies for setting aside a default once it has ripened into a judgment." Moreover, "the district court enjoys considerable latitude under the 'good cause shown' standard" of Rule 55(c) to grant a defendant relief from a default entry. Waifersong Ltd. Inc. v. Classic Music Vending, 976 F.2d 290, 292 (6th Cir. 1992); see also Manufacturers' Indus. Relations Ass'n v. East Akron Casting Co., 58 F.3d 204, 208 (6th Cir. 1995) (recognizing that motions to set aside default entries, as opposed to default judgments, are to be granted more liberally). This exercise of discretion entails consideration of three factors: 1) whether the plaintiff would be prejudiced; 2) whether the defendant has a meritorious defense; and 3) whether the culpable conduct of the defendant led to the default. See Manufacturers' Indus. Relations Ass'n, 58 F.3d at 209, (citing both Waifersong, 976 F.2d at 292 and United Coin Meter Co., Inc. v. Seaboard Coastline R.R., 705 F.2d 839, 845 (6th Cir. 1983)). Indeed, this court has indicated a "strong preference for trials on the merits." Shepard Claims Serv., Inc. v. William Darrah & Assoc., 796 F.2d 190, 193 (6th Cir. 1986); see also United Coin Meter, 705 F.2d at 846.
 
 
 3
 The district court applied the three-factor test set forth above and held that the government's claim of prejudice was not significant enough to warrant denial of Journey's motion. Furthermore, the court found that Journey's failure to file a timely answer was not wilful or culpable. In considering the third factor of the standard, however, the district court set forth that "one component of the meritoriousclaim or defense factor... is the standing of the party asserting the claim." Therefore, the district court directed Journey to supplement the record with any evidence he possessed that demonstrated a legally cognizable interest in the property sufficient to establish standing to challenge the forfeiture under Article III of the United States Constitution.[3] The district court further indicated that it would only set aside the Entry of Default if Journey successfully established standing.
 
 
 4
 Despite the fact that Journey offered evidence that record equitable title was solely assigned to him, as well as other evidence indicating that he had an interest in the property, the district court denied Journey's claim on the grounds that his bare title under the installment contract was insufficient for standing purposes. As a result, the district court did not reach the merits of Journey's innocent ownership defense. On appeal, Journey disagrees with the district court's holding that he did not establish "dominion and control or other indicia of true ownership" of the property, was merely a "nominal owner" and hence lacked standing to contest the forfeiture. In our view the record establishes that Journey retained an actual, non-fictitious interest in the property sufficient to give him standing to litigate the issue of forfeiture. We therefore reverse and remand for a hearing to determine whether Journey was an innocent owner whose interest is not subject to confiscation by the government.[4]
 
 
 5
 We review the District Court's determination that Journey lacked standing to contest the forfeiture under the traditional de novo standard of review for standing because the issue of whether a claimant has constitutional standing is a question of law. See United States v. 37.29 Pounds of Semi-Precious Stones, 7 F.3d 480, 483 (6th Cir. 1993); Michigan v. United States, 994 F.2d 1197, 1202 (6th Cir. 1993).
 
 
 6
 Standing as a constitutional and common law doctrine should not be used as an easy substitute for a decision on the merits or, as is so often the case, a way to manipulate and dismiss a case because of the weakness of the underlying cause of action. In the Supreme Court's language, standing requires only "a personal stake in the outcome... to assure that concrete adverseness which sharpens the presentation of issues" in a judicial setting, Baker v. Carr, 369 U.S. 186, 204 (1962), and "some direct injury... both real and immediate, not conjectural or hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). Violations of common law rights protected by the common law of property, contract, torts and restitution are sufficient for standing purposes.
 
 
 7
 We have previously said in a comprehensive opinion on forfeiture law that such "proceedings implicate property rights which have traditionally been measured in terms of state law" and, specifically, that the wife's interest in land held in a tenancy by the entireties - a conditional estate that depends on the death of the husband before the wife - provides standing. United States v. Property at 2525 Leroy Lane, 910 F.2d 343, 349 (6th Cir. 1990). In United States v. 567 Liscum Drive, 866 F.2d 213, 217 (6th Cir. 1989), relied upon by the district court, we said that "merely a nominal or straw owner," whose bare legal title was the result of a drug dealer's putting title in the name of a third person to avoid forfeiture, has no standing because the straw owner has no actual property interest.Such a fictitious interest does not confer standing.
 
 
 8
 Applying these standards to the case at hand, it is clear that the district court erred in concluding that Bart Journey's interest in the land was insufficient to allow him to contest the confiscation of the real property by the government. Bridwell's Grocery is a small grocery and video rental store. Noel and Rose Bridwell originally held equitable and legal title to the property, (R. 19: Bridwell Ans., J.A at 66), but on October 20, 1988, Lester and Nancy Sadler purchased the property from the Bridwells for $65,000.00 under a recorded land installment contract. (A copy of the land installment contract appears at R.19: Bridwell Ans., Ex. A, J.A. at 68.) The Sadlers held equitable title to the grocery store pursuant to the contract. Lester Sadler, who is brother-in-law to David Michael Journey, brother of the claimant, Bart Journey, borrowed $10,000.00 from David Michael and his wife, Jackie Journey, for a down payment on the grocery store. (R. 32: Journey Mot. for Relief and Mem. in Supp., Ex. B, J.A. at 117; R. 35: U.S. Mem. in Opp'n, Ex. D, J.A. at 161.) When the Sadlers were unable to timely repay the loan, however, they refinanced the loan through Star Bank with David Michael as a co-signor. (R. 32: Journey Mot. for Relief and Mem. in Supp., Ex. B, J.A. at 117; R. 35: U.S. Mem. in Opp'n, Ex. I, J.A. at 173.)
 
 
 9
 In 1990 the Sadlers defaulted on the refinanced loan and Star Bank looked to David Michael for repayment. (R. 32: Journey Mot. for Relief and Mem. in Supp., Ex. B, J.A. at 117; R. 35: U.S. Mem. in Opp'n, Ex. I, J.A. at 173.) Although Bridwell's Grocery was the Sadlers' only asset, David Michael and Jackie did not want title to the property because, according to Jackie's affidavit, they did not want to run a grocery store. (R. 32: Journey Mot. for Relief and Mem. in Supp., Ex. B, J.A. at 117-18.) Instead, David Michael and Jackie asked Journey to take equitable title and manage the store, and repay the Star Bank loan from store profits. (R.32: Journey Mot. for Relief and Mem. in Supp., Ex. B, J.A. at 118.) Journey agreed, and on October 4, 1990, the Sadlers assigned in a recorded writing their equitable interest in the property to Journey who assumed the obligation to pay off the approximately $51,000.00 balance then outstanding on the land installment contract originally between the Bridwells and Sadlers. (A copy of the assignment appears at R.32: Journey Mot. for Relief and Mem. in Supp., Ex. A, Att. 1, J.A. at 115.) There is no suggestion in the record Journey took the property as a straw man or anything other than a legitimate owner.
 
 
 10
 Journey ran the grocery store and made payments on the contract for approximately three to six months after taking equitable record title to the property. (R.32: Journey Mot. for Relief and Mem. in Supp., Ex. B, J.A. at 118.) During this period there is no evidence of any effort by Journey to operate an illegal gambling business. Journey soon lost interest in the business, however, due to its failure to produce significant profits. Therefore, he orally assigned the grocery store to his eighteen-year-old nephew, James "Arkie" Journey, the son of David Michael and Jackie. (R.32: Journey Mot. for Relief and Mem. in Supp., Ex. A, J.A. at 108; Ex. B, J.A. at 118.) Within a matter of weeks it became apparent that Arkie was unable to handle the responsibility of running the store and he orally assigned his interest to his mother Jackie. Journey orally agreed to this assignment for the consideration that Jackie and her husband, David Michael, would make the remaining payments on the land contract and operate the store. It was agreed that Journey would not convey title to Jackie until after the land contract was fully paid off and Journey was paid for the improvements he made to the property. (R.32: Journey Mot. for Relief and Mem. in Supp., Ex. A, J.A. at 108-09; Ex. B, J.A. at 116-17; Ex. E, J.A. at 129.) The record does not indicate what, if any, improvements were made, butso far as the record shows, Journey remained obligated to pay off the original land contract.
 
 
 11
 The fact that, in late 1993, David Michael rented the rear of Bridwell's Grocery to Claude Hamilton, a known bookmaker, has no effect on Journey's standing to pursue his claim of innocent ownership as the registered equity owner of the property. In contrast to the facts of 526 Liscum Dr., Journey managed and operated Bridwell's Grocery for a period of at least three months; he effectively leased the premises to his brother and sister-in-law when he orally transferred the store to them in early 1991; he collected rent in the form of payments made by his brother and sister-in-law directly on the loan; and he purportedly made improvements to the land. Perhaps most important, Journey remained legally obligated to ensure that payments were made on the land installment contract with the Bridwells and was legally accountable by contract for any default, despite the fact that David Michael and Jackie made most of the payments on the loan. Not only has Journey had both actual possession and control over Bridwell's Grocery, but he continues to hold title and to have a financial stake in the property. Accordingly, he has a sufficient interest in the property for standing purposes.
 
 
 12
 The United States argues it would be substantially prejudiced, in part, if Journey is allowed to litigate his innocent ownership claim because the Government has paid the Bridwells the balance due on the land contract, leaving Journey free of any obligation to make further payments. The court below can review this issue on remand after it determines the "innocent owner" issue and provide such relief as Justice may require if Journey prevails on this issue. The only issue we decide on appeal is the issue decided below - namely, whether Journey has standing to contest the forfeiture issue, and we make no ruling concerning either Journey's innocent ownership defense or whether the government will be prejudiced.
 
 
 13
 For the foregoing reasons, we REVERSE and REMAND for a hearing to determine whether Journey was an "innocent owner" whose interest is not subject to confiscation by the government and such other issues as may be present in the case beyond the standing issue.
 
 
 
 NOTES:
 
 
 *
 The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.
 
 
 [1]
 Rule 55(c) states, in relevant part, "For good cause shown the court may set aside an entry of default...."
 
 
 [2]
 Although a Default Judgment has since been entered against Bart Journey, it is the district court's denial of Journey's Motion for Relief from Default Entry - filed before the Default Judgment was entered - that is the issue on appeal.
 
 
 [3]
 "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority...." U.S. Const. art. III, § 2.
 
 
 [4]
 The only issue we decide on appeal is the issue of Journey's standing. There are no issues before the court concerning either the validity of his innocent ownership defense or whether reversal of the Default Entry will cause prejudice to the government.