RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0041p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

$22,050.00 UNITED STATES CURRENCY,

                *Defendant,*

JAMES CHRISTOPHER ROWLAND,

                *Claimant-Appellant.*

No. 08-6335

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 08-00180—Thomas A. Wiseman, Jr., District Judge.

Submitted: November 19, 2009

Decided and Filed: February 16, 2010

Before: MARTIN, BOGGS, and COLE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Peter J. Strianse, TUNE, ENTREKIN & WHITE, P.C., Nashville, Tennessee, for Appellant. Debra Teufel Phillips, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

    BOYCE F. MARTIN, JR., Circuit Judge. In connection with a drug distribution and money laundering investigation, the United States Drug Enforcement Administration seized, among other things, $22,050 in United States Currency from the office of Rowland Development FLP in Murfreesboro, Tennessee. Claimant James Rowland ran this company.

1

Rowland filed with the DEA an administrative claim to the seized objects, and the DEA eventually returned all of the items except the $22,050. Instead of returning the money, the DEA referred the matter to the United States Attorney for the Middle District of Tennessee, who filed an *in rem* forfeiture action against the money.

Because Rowland was a known potential claimant to the money, the government properly provided him notice of the action via certified mail. However, Rowland swears that he never received the notice because his secretary did not give it to him. Rowland did not timely file a verified claim to the funds and did not otherwise timely appear or respond in the civil action. Five months after filing the action, and four months after the deadline to respond, the government sought default against the money, which the Clerk entered.

Apparently Rowland did receive a copy of the government's motion for default. On the same day that he received the copy of the motion, before entry of an actual default judgment, Rowland moved pursuant to Federal Rule of Civil Procedure 55(c) to set aside the default and also filed a verified claim and answer to the forfeiture action. The government thereafter moved to strike Rowland's verified claim as untimely. Incorporating our prior cases requiring "strict compliance" with the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions into the Rule 55(c) analysis and relying heavily upon those cases, the district court denied Rowland's motion to set aside default, granted the government's motion to strike Rowland's late-filed claim, and entered judgment against the $22,050 in favor of the United States.

Rowland now appeals both decisions. Because we believe that the district court incorrectly focused on case law discussing compliance with the Supplemental Rules instead of the Rule 55(c) test for setting aside default in general, we **REVERSE** and **REMAND** to the district court.

**I.**

On September 20, 2007, the DEA executed a search warrant at the office of Rowland Development FLP in connection with a money laundering and controlled substance investigation. The agents seized a Porsche, a Ford sports utility vehicle, $3,482 in cash from one location in the office and another $22,050 in cash from a different location in the office.

James Rowland, represented by counsel, timely filed a claim with the DEA asserting an ownership interest in the seized money and cars. As required by the applicable statutes, upon receipt of Rowland's administrative claim, the DEA forwarded the seized money and cars to the United States Attorney's office to decide whether to pursue civil forfeiture. On May 29, 2008, the DEA returned the two cars and the $3,482 to Rowland because the government had declined to seek forfeiture of those items.

However, the DEA did not return the $22,050 because, unbeknownst to Rowland, the government had initiated an *in rem* forfeiture action approximately three months earlier, on February 21, 2008. The government sent notice of the forfeiture action to Rowland via certified mail to his business, *i.e.* the place from which the money was seized, on March 10, 2008.[1] The certified mail return receipt indicates that the notice was received and signed for by a Ms. Landry, who is Rowland's secretary. Rowland claims, via sworn affidavit, that he never actually received the notice. Ms. Landry further claims via affidavit that she apparently never opened the envelope from the United States Attorney's office and therefore never gave it to Rowland.

In addition to providing notice directly to Rowland, the government also sent notice of the forfeiture action to Rowland's attorney by regular mail. Rowland's attorney, again via sworn affidavit, claims never to have received the notice.[2] Although Rowland now claims that the government could have done more to ensure that he received actual notice of the forfeiture action, it is uncontested that the government complied with the applicable rules for providing notice of the forfeiture.

Pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rowland had thirty-five days from the date that the

---

[1] Under the Supplemental Rules, the government does not have to comply with the formal service of process provisions of Federal Rule of Civil Procedure 4 when providing notice of forfeiture to potential claimants. This is because potential claimants are not defendants in an *in rem* action, the seized objects or assets are. Instead, all that is required is that the government provide notice of the action "to any person who reasonably appears to be a potential claimant on the facts known to the government . . . by means reasonably calculated to reach the potential claimant." FED. R. CIV. P. SUPP. R. G(4)(b). Thus, certified mail was sufficient.

[2] As required, the government also published notice of the forfeiture proceeding in the *Daily News Journal* of Murfreesboro, Tennessee for three consecutive weeks from March 25th through April 8, 2008.

government sent Rowland notice of the action via certified mail, March 10, 2008, to file a verified claim to the money as stipulated by the notice. Thus, Rowland's verified claim was due by April 15th. Because he claims to have never received notice of the action, Rowland did not timely file a verified claim.

As stated above, the DEA returned the cars and the $3,482 to Rowland on May 28th, but did not return the $22,050. Several more months passed with, apparently, no action. Then, on August 7th, the government moved under Federal Rule of Civil Procedure 55(a) for entry of default, which the Clerk entered the next day. Importantly, default judgment was not entered until after Rowland had made an appearance, filed a verified claim and answer, and moved to set aside the default.

Rowland received a copy of the motion for default on August 12th and immediately called his attorney. That same day, Rowland moved to set aside the default and also filed a verified claim and answer to the underlying forfeiture action. The motion to set aside default is relatively paltry. It describes the chronology of events leading up to the default and obliquely argues that service of the original notice was inadequate. The motion does not assert that Rowland has meritorious defenses to the forfeiture claim and does not discuss whether the government would be prejudiced by setting aside the default.

However, along with the motion to set aside default, Rowland filed a verified claim to the money in which he swore under penalty of perjury that he had an ownership interest in the money. Rowland also filed an answer to the forfeiture complaint that generally denies the allegations and asserts that Rowland had not violated any drug or money laundering laws. The answer further asserts three affirmative defenses—that the complaint fails to state a claim, that the complaint violates the Eighth Amendment's excessive fines clause, and that the money was the fruit of an illegal search and seizure and thus subject to suppression by Supplemental Rule G(8)(a)—but does not provide any factual allegations to substantiate these defenses. Aside from Rowland's sworn assertion of an ownership interest in the money, Rowland submitted no proof, such as affidavits

or documents, in support of his motion or claim.[3]  Nevertheless, it is undisputed that Rowland's claim and answer comply with all of the requirements of Supplemental Rule G, save, of course, timeliness.

The government responded to the motion to set aside default and also moved to strike Rowland's verified claim for failure to comply with the timing requirements of Supplemental Rule G.  The court, primarily focusing on the requirements of Rule G, declined to set aside the default and granted the government's motion to strike.  *United States v. $22,050.00 United States Currency*, No. 3:08-cv-180, 2008 U.S. Dist. LEXIS 75702 (M.D. Tenn. Aug. 26, 2008).  In its opinion, the court found that the government had satisfied its duty to take adequate steps to provide Rowland with notice of the forfeiture action but made no finding as to whether Rowland or his counsel had actual notice.  Citing *United States v. Thirty-Five Firearms*, 123 F. App'x 204, 206-07 (6th Cir. 2005), the court also rejected Rowland's argument that his filing of a claim with the DEA, before the forfeiture action had even been initiated, was sufficient to satisfy the forfeiture claim rules.  Finally, the court credited the government's contention that setting aside the default would prejudice the government because it would set a bad precedent.

## II.

Rowland appeals the district court's denial of his Rule 55(c) motion to set aside default as well as the grant of the government's Supplemental Rule G motion to strike his verified claim and answer.  Both decisions are reviewed for abuse of discretion. *Thirty-Five Firearms*, 123 F. App'x at 205-06 (Rule G motion to strike claim); *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 352 (6th Cir. 2003) (Rule 55(c) motion to set aside default).  Furthermore, the two motions essentially presented the same question to the district court—whether to excuse Rowland's untimely filing of a

---

[3]The affidavits from Rowland, Ms. Landry, and Rowland's counsel, all referenced above, were submitted in connection with Rowland's motion for reconsideration filed *after* the district court had denied Rowland's motion to set aside default.

verified claim and answer. Thus, the appeal of the two decisions also presents the same basic question.

However, our cases discussing the two rules establish materially different standards in determining whether to excuse noncompliance or to adhere strictly to the rules. In general, our cases discussing motions to set aside default under Rule 55(c) are extremely forgiving to the defaulted party and favor a policy of resolving cases on the merits instead of on the basis of procedural missteps. *See, e.g.*, *O.J. Distributing*, 340 F.3d at 353 (stating that the standard for setting aside a default is less strict than the standard for setting aside a default judgment and that the district court has "considerable latitude" to grant relief from a default); *United States v. Bridwell's Grocery & Video*, 195 F.3d 819, 820 (6th Cir. 1999) (stating, in a civil forfeiture case, that the Sixth Circuit has a "strong preference for trials on the merits" as opposed to default judgments) (internal quotation marks omitted).

On the other hand, our cases discussing motions to strike claims under Supplemental Rule G favor strict adherence to the rules and generally do not excuse even technical non-compliance with the rules. *See, e.g.*, *Thirty-Five Firearms*, 123 F. App'x at 206 (stating that in an *in rem* forfeiture proceeding "a claimant is held to 'strict compliance with the provisions of C(6).'"[4]) (quoting *United States v. One Assortment of Eighty-Nine Firearms*, 846 F.2d 24, 26 (6th Cir. 1988)). Thus, we believe that whether the district court should have excused Rowland's failure to timely file a claim turns on whether we view this case through the more permissive lens of Rule 55(c) or the stricter lens of Supplemental Rule G. The first question, therefore, is under which rubric courts should approach these kinds of cases, *i.e.* when a known claimant fails to timely file a verified claim but, after entry of default, moves to set aside default and files a claim that complies in all technical respects with Supplemental Rule G.

---

[4]The *in rem* forfeiture Supplemental Rules were renumbered in 2006. The provisions that are now located in Rule G were previously located in Rule C(6). Thus, the older cases discuss adherence to Rule C(6).

Neither Rowland nor the government focuses on this question. Instead, Rowland takes the position that his situation qualifies for relief under either the Rule 55(c) line of cases or the Rule G line of cases. The government, of course, disagrees, arguing that Rowland fails both tests.

We disagree with both the government and Rowland. Instead, we think that, if we rely exclusively on the Rule 55(c) cases, the district court may have abused its discretion in not allowing Rowland's claim to proceed on the merits. However, if we incorporate the more strict Supplemental Rule G cases into the analysis, then the district court did not abuse its discretion in proceeding to enter judgment for the United States.

There is no firmly established "test" under the Supplemental Rule G case law to determine whether to excuse noncompliance generally, and untimeliness specifically. Although *Thirty-Five Firearms* mentions that the district court had considered "numerous factors before granting the United States' motion to strike the answer, including the time the [claimants] became aware of the seizures, whether the government encouraged the delay, the reasons for the delay, whether the [claimants] advised the court and the government of their interest in the property before the claim deadline, and whether the government would be prejudiced by the late filing," 123 F. App'x at 207, the opinion hardly establishes these considerations as the "test" to use in these kinds of cases. Instead, most cases—which are factually distinguishable from this case because they do not involve a proper, but untimely, verified claim and answer[5]—simply intone the requirement of strict compliance with the forfeiture rules without explaining why strict adherence is necessary in that particular case.

---

[5]The Supplemental Rule G cases supporting the court's grant of the government's motion to strike Rowland's claim are factually distinguishable, in that they deal with a response that is timely filed but is technically deficient for some reason. For example, in *Thirty-Five Firearms*, the claimant knew of and timely responded to the forfeiture action but did not file a verified claim. Instead, the claimant only answered the forfeiture complaint. 123 F. App'x at 205. Under those facts, we held that it was not an abuse of discretion to strike the claim because we require "strict compliance" with the supplemental rules as a prerequisite for statutory standing to challenge a forfeiture action. *Id.* at 206-07. Similarly, in *United States v. $5.730.00 in U.S. Currency*, the claimant timely filed an answer to the forfeiture complaint but failed to file a verified claim. 109 F. App'x 712, 713-14 (6th Cir. 2004). Again we found that it was not an abuse of discretion to strike the claimant's answer and enter judgment against the *res* in favor of the government. Neither of these cases deals with our fact pattern, in which a known claimant failed to file anything because he did not know of the forfeiture action to begin with.

On the other hand, Rule 55(c) exists to handle this exact scenario of a technically compliant but untimely filing in federal civil cases generally. The question is thus whether there is anything functionally different about civil forfeiture cases that compels us to treat untimely response in these cases differently than untimely response in all other civil cases. And on this point, despite the obvious fact that there are additional rules for *in rem* forfeiture cases, we find no compelling functional difference between forfeiture cases involving known claimants and other civil cases with regard to how to deal with late response. We can see no less of a preference for seeing forfeiture cases decided on their merits than civil cases generally, and we find no greater prejudice due to delay in forfeiture cases than in civil cases generally.

In sum, our review of the two lines of cases and the policies animating the differing approaches leads us to conclude that the proper way to analyze this case is to focus on the general Rule 55(c) test for setting aside default in the case of a known claimant filing a technically compliant but untimely verified claim and answer, without regard to the Supplemental Rule G cases. We therefore hold that in civil forfeiture cases such as this one, where the question is whether to excuse a known claimant's failure to file a verified claim and answer in the allotted time, district courts should analyze the case using the generally applicable Federal Rules rather than under our requirement of "strict compliance" with the forfeiture rules.

### III.

Having decided that the district court should have analyzed this case solely under the Rule 55(c) case law, we turn now to the question of whether the district court's refusal to set aside the default was an abuse of discretion under the Rule 55(c) cases. Although we review a district court's decision to deny a Rule 55(c) motion to set aside default for abuse of discretion, due to the policy of favoring judgments on the merits, "'a 'glaring abuse' of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default.'" *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990) (quoting *United Coin Meter v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983)); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th

Cir. 1986) ("[A] strong preference for trials on the merits in federal courts has led to the adoption of a somewhat modified standard of review where defaults are involved."). Furthermore, we have often highlighted the difference between default and default judgments:

> [I]t is important to distinguish between an entry of default and a default judgment. That is, a stricter standard of review applies for setting aside a default once it has ripened into a judgment. Specifically, once the court has determined damages and a judgment has been entered, the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation as reflected in Rule 60(b).

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 595 (6th Cir. 2006) (quoting *O.J. Distrib.*, 340 F.3d at 353).

In this case, Rowland moved to set aside default and filed a verified claim and answer to the forfeiture complaint within four days of the Clerk's entry of default, well before the court had entered judgment. Therefore, the applicable standard of review in this case is Rule 55(c)'s less deferential species of abuse of discretion rather than the normal abuse of discretion review.

Under Rule 55(c), a district court should set aside default upon a showing of "good cause." FED. R. CIV. P. 55(c). In determining whether good cause exists, the district court must consider: "(1) [w]hether culpable conduct of the defendant led to the default, (2) [w]hether the defendant has a meritorious defense, and (3) [w]hether the plaintiff will be prejudiced." *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). Although "[a]ll three factors must be considered in ruling on a motion to set aside an entry of default," when a defendant has a meritorious defense and the plaintiff would not be prejudiced, "it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead." *Shepard*, 796 F.2d at 194. Because our cases make clear that prejudice to the plaintiff and the presence of a meritorious defense are the two most important considerations, we address those first.

## A.      Would the Government Have Been Prejudiced by Setting Aside the Default?

In its briefing to the district court, the government never concretely asserted that any prejudice would result from setting aside default. However, in its brief on appeal, the government points to two supposedly prejudicial consequences that would befall it if Rowland's claim were allowed to proceed to resolution on the merits: delay resulting in increased litigation cost, and bad precedent. Neither argument persuades us.

The government first argues that delay leads to increased litigation costs. This argument has two pieces: delay and increased cost. As for delay, this argument seems disingenuous. The government filed its complaint on February 21, 2008 and provided Rowland notice of the action in early- to mid-March, although he denies ever actually having received it. Rowland's deadline to file a claim was April 15th and the deadline for the general public to make a claim was May 8th. No one filed a claim, so the government could have sought default on May 9th.[6] Yet the government apparently did nothing until August 7th when it moved for entry of default, and Rowland filed his claim August 12th. If delay is so problematic in this case, it is unclear why the government waited three months to take the next step of seeking default. But given its decision to wait three months to advance the case, the government may not now complain of a three-month delay.

As for increased litigation costs, the government points to *Thirty-Five Firearms* to support its argument that increased cost is the kind of prejudice that can support sustaining entry of default. However, *Thirty-Five Firearms* is not a Rule 55(c) case; it is a Supplemental Rule G case. Thus, it is inapposite for the reasons set forth above. Furthermore, it does not make intuitive sense that simply claiming an increase in litigation cost should be sufficient to establish prejudice. Setting aside default will *always* increase litigation cost to the plaintiff because the plaintiff will actually have to

---

[6]We do not mean to imply that the government should have sought default on May 9th, just that it theoretically could have done so. It is a common and praiseworthy practice for plaintiffs to wait a few days or weeks beyond the actual deadline to proceed with seeking default. However, waiting three months is entirely different than waiting a few weeks, so the fact remains that one cannot complain of a three-month delay in responding to a complaint when one waited those same three months to move the case forward.

litigate the case.  Yet, this Court encourages setting aside default to allow for resolution on the merits, which will necessarily drive up litigation costs.  The government never explains how setting aside default in this case would increase litigation costs to a greater degree than would naturally occur in all cases of setting aside default.  Thus, neither delay nor increased litigation cost seems especially prejudicial in this case.

The government also argues that setting aside default here would create bad precedent that would "undermine" the entire civil forfeiture system, leading to all potential claimants and their attorneys ignoring properly served forfeiture claims. Chicken Little would be proud of this logic.  Our precedent for setting aside default has been around for quite a while, and applying precedent does not somehow create bad precedent.  Furthermore, excusing Rowland's tardiness in this case will not undermine the efficient operation of civil forfeiture.  If this case had more egregious facts—such as the claimant intentionally ignoring the forfeiture, an unreasonable delay between entry of default and the claimant making an appearance, or some other indicia that the claimant was intentionally gaming the system—then the government would be correct in asserting that setting aside the default would undermine the system.  But, based on the record currently before the Court, this case has none of those facts, and, if those facts were present, we would no doubt affirm the entry of default.  However, under these facts, setting aside default would not have resulted in the forfeiture sky falling.

**B.      Does Rowland Have a Meritorious Defense?**

The second important Rule 55(c) consideration is whether the defendant has a meritorious defense.  Consistent with our permissive stance in setting aside defaults, a defense is meritorious if "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Burrell v. Henderson*, 434 F.3d 826, 834 (6th Cir. 2006) (citations omitted).  We have previously stated that a defense is meritorious if it is "good at law," regardless of whether the defense is actually likely to succeed on the merits. *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003) (citations omitted).

In this case, Rowland's motion to set aside default did not highlight any defenses. Thus, if assessed standing alone, the motion would fail to meet its burden of establishing one of the three Rule 55(c) requirements. But, in his answer to the forfeiture complaint, filed the same day as the motion to set aside default, Rowland denied that there was any violation of the controlled substance or money laundering laws, which was the operative portion of the forfeiture complaint. He also asserted three affirmative defenses—failure to state a claim, excessive fine in violation of the Eighth Amendment, and illegal search and seizure—although he provided no factual allegations in support of these defenses. Thus, although Rowland has asserted defenses, he has done so very conclusorily.

However, our cases discussing meritorious defenses in the context of setting aside default do not require that a defense be supported by detailed factual allegations to be deemed meritorious. Instead, all that is needed is "'a hint of a suggestion' which, proven at trial, would constitute a complete defense." *Invst Fin. Group v. Chem-Nuclear Sys.*, 815 F.2d 391, 399 (6th Cir. 1987) (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980)). This is because likelihood of success is irrelevant. *Id.* All that matters is whether a well-stated defense, if sustained, would change the outcome.

Under these facts, the outcome would be different if it were true that neither the controlled substance nor the money laundering laws had been violated. The outcome also would be different if the seized currency were the fruit of an unlawful search and seizure. FED. R. CIV. P. SUPP. R. G(8)(a). Furthermore, that Rowland acted so quickly in moving to set aside default, filing a verified claim, and filing an answer on the same day that he realized that default had been entered shows that Rowland actually intends to defend against the forfeiture. Thus, we are satisfied that Rowland has asserted meritorious defenses to the forfeiture claim.

**C.     Did Rowland's Culpable Conduct Lead to the Default?**

Of the three Rule 55(c) considerations, whether his conduct led to the default presents the biggest problem for Rowland. Two facts cut against him. First, Rowland asserts that, although his secretary did receive the government's notice of the forfeiture, for unexplained reasons he never saw it. He also asserts that his attorney never received a copy of the notice even though the government swears to having placed it in the mail. This coincidence is somewhat difficult to accept, but the government has not produced any evidence that Rowland's story is false.

Second, the DEA returned everything except the $22,050 to Rowland on May 29, 2008. Yet, over the next two months, apparently neither Rowland nor his attorney inquired as to why the $22,050 had not been returned. The closest Rowland comes to explaining this failure to make reasonable inquiry is his professed belief that, by filing an administrative claim with the DEA, he had preserved his claim and thus needed to do nothing further. Minds could certainly differ whether this was a reasonable belief.

However, in the context of Rule 55(c), mere negligence or failure to act reasonably is not enough to sustain a default. "[I]t is not absolutely necessary that the neglect or oversight offered as reason for the delay in filing a responsive pleading be excusable." *Shepard*, 796 F.2d at 194. Instead, for the defendant to be deemed culpable for the default, he "must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on judicial proceedings." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir. 1996) (citations omitted); *see also Shepard*, 796 F.2d at 194 (stating that when a defendant has a meritorious defense and the plaintiff would not be prejudiced, "it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead"). On this question, the district court made no finding as to Rowland's culpability or lack thereof, as the court analyzed the issue under the incorrect standard. Though there is no evidence currently in the record to suggest that Rowland was culpable for the delay in the sense described in *Shepard* and *Thompson*, we believe it nevertheless to be the better course, now that we have instructed it on the proper

analysis, to allow the district court to pass upon this question in the first instance if it be so advised.

## IV.

For the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** with instructions to determine whether Rowland was culpable under Rule 55(c) for the default by willfully failing to appear and plead or, else, vacate the judgment against the $22,050 and adjudicate Rowland's claim on its merits.