**File Name: 13a0321n.06**

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 08-5853**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Apr 02, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| REAL PROPERTIES AND PREMISES | ) | O P I N I O N |
| KNOWN AS 323 FORREST PARK DRIVE, | ) | |
| UNIT 2-4, MADISON, DAVIDSON COUNTY, | ) | |
| TENNESSEE and 808 NORTH FIFTH | ) | |
| STREET, NASHVILLE, DAVIDSON COUNTY, | ) | |
| TENNESSEE, WITH ALL APPURTENANCES | ) | |
| AND IMPROVEMENTS THEREON, | ) | |
| | ) | |
| Defendants, and | ) | |
| | ) | |
| AMILCAR C. BUTLER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

**BEFORE: BOGGS, McKEAGUE, Circuit Judges, and CARR, District Judge.**[*]

**CARR, District Judge.** Appellant, Amilcar C. Butler, appeals *pro se* the trial court's March 28, 2008, order granting summary judgment to plaintiff-appellee, the United States of America. He also appeals the trial court's order denying summary judgment to defendants, Real Property and Premises known as 323 Forrest Park Drive, Unit 2-4, *et al*.

---

[*]The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

## I. Factual and Procedural Background

This is a civil forfeiture case in which the government brought suit to terminate Butler's rights to two real properties Butler used in connection with illegal drug sales.

In September 2000, the Nashville Police Department arrested Butler after he attempted to purchase five kilograms of cocaine from an undercover police officer. Butler paid $111,000 for the cocaine, and told the undercover officer he had enough money to buy an additional twenty kilograms. Butler was taken into state custody.

On August 28, 2001, the government began an investigation into a drug organization run by Kenneth Kimball. The government first learned of Butler's drug involvement in an interview during that investigation, which the government conducted on February 19, 2002.

In 2002, a federal grand jury returned an indictment charging Butler with conspiracy to possess five or more kilograms of cocaine and attempted possession of five or more kilograms of cocaine with the intent to distribute. In 2003, a federal grand jury returned another indictment charging Butler with an additional twenty-six drug and money-laundering related charges.

In July 2004, a jury convicted Butler of the 2002 charges. After trial, the court sentenced Butler to life imprisonment. The government thereafter dismissed the 2003 charges.

On December 1, 2006, the government brought civil forfeiture proceedings under 21 U.S.C. § 881(a)(7) against the defendant properties, 323 Forrest Park Drive, Unit 2-4, Madison, Davidson County, Tennessee, and 808 North Fifth Street, Nashville, Davidson County, Tennessee, alleging Butler used the properties in committing crimes under 21 U.S.C. §§ 841 and 846. Butler was the registered owner of both properties. DEA Agent James R. Goodman investigated the properties and

2

filed an affidavit stating he believed Butler purchased and upgraded the properties with proceeds from drug trafficking.

The trial court found the government established probable cause to believe the properties were subject to forfeiture. The court issued a notice requiring any person claiming an interest in the properties to file a verified claim within thirty days of receiving notice of the claim. It also required any claimant to file an answer within twenty days of filing a verified claim. The government sent Butler notice of the proceedings *via* certified mail on or around January 22, 2007.

Butler filed numerous documents with the trial court. On February 28, 2007, he filed a notarized document entitled, "AFFIDAVIT Amilcar-Cabral: Butler By Special Visitation." The seven-page document contains incomprehensible language, which, apparently, Butler believed was necessary to protect his legal rights. Although Butler claimed ownership of the defendant properties in this document, he failed to swear to the document's accuracy under penalty of perjury. Butler contemporaneously filed a document entitled "Notice of Grievance." This document contains twenty-six pages of irrelevant definitions.

On March 20, 2007, Butler filed with the court and sent to an Assistant United States Attorney in the district a document entitled, "PETITION FOR REDRESS OF GRIEVANCE in the nature of a PRIVATE INTERNATIONAL ADMINISTRATIVE REMEDY." Butler swore the contentions in the document were true to the best of his knowledge, under penalty of perjury.

In the document, Butler stated he sought to exhaust his "administrative remedies." He argued, in unintelligible fashion, several irrelevant United States historical issues. For example, he argued that the United States improperly admitted Hawaii and Alaska into the nation and the flag should, therefore, contain only forty-eight stars.

In the document, Butler went on to claim he did not receive notice of the forfeiture action, the government "failed to take note of the statute of limitations," and it had not established probable cause to support the forfeiture action. He also asserted several nonsensical legal arguments (e.g., "No verified complaint for Forfeiture has been filed by a holder-in-due-course of any contract requiring specific performance, bearing Declarant's True name and Bona Fide signature."). Butler then provided a list of "inquiries," in which he asked the AUSA questions such as: "Is it the policy and custom of City of Nashville to seize and imprison people, who may be inhabitant(s) for the purpose of serving civil process." Butler provided an answer to each question and stated that the AUSA's failure to respond would admit his answers.

On April 10, 2007, Butler filed a document entitled "Verified Declaration." In the document, he stated that the AUSA's failure to object to his inquiries and proposed answers in his previous filing admitted that the answers were correct.

The government moved for decree of forfeiture on April 11, 2007. In its motion, the government argued the court should enter judgment against Butler because he failed to file a verified claim or answer.

On May 30, 2007, June 28, 2007, and July 20, 2007, Butler filed documents that repeated excerpts from his previous filings.

The trial court issued an order denying the government's motion for a decree of forfeiture. The court stated that Butler had filed several documents in response to the government's forfeiture complaint, but that "none of [Butler's] filings are intelligible to the [c]ourt and therefore, they have not been considered on their merits." Butler, therefore, "wholly failed to comply with the provisions of Rule G(5) of the Supplemental Rules For Admiralty Or Maritime Claims and Asset Forfeiture

4

Actions, which required him to file a Verified Claim to the Defendant properties and to file an Answer within twenty (20) days after filing the Verified Claim." The court explained that, because "[t]he Government's filings in this case have provided very little assistance to the [c]ourt in sorting out the issues raised by the purported claimants[,]" it preferred to decide whether to dispose of Butler's claim after additional briefing under a motion for summary judgment.

The government thereafter filed a motion for summary judgment, arguing Butler lacked standing to contest the forfeiture action because he failed to file a verified complaint or answer. Butler filed a response opposing the motion.

On March 28, 2008, the trial court granted the government's motion for summary judgment. The trial court stated Butler received notice of the forfeiture action on January 22, 2007. The notice included instructions that he needed to follow to contest the proceedings. Butler failed to file a verified claim or answer within the required time period. After briefly discussing the incoherent nature of Butler's filings, the court concluded: "[Butler] has failed to comply with the Supplemental Rules and instead his filings appear to be a concerted effort to obfuscate the record. Accordingly, the [c]ourt finds that . . . Butler lacks statutory standing to pursue claims in relation to the Defendant Properties."

On June 20, 2008, the trial court issued a decree of forfeiture ordering the government to dispose of the defendant properties.

Butler filed a notice of appeal, which this court dismissed for want of prosecution because Butler failed to pay the filing fee. The court reinstated the appeal after Butler paid the fee.

## II. Discussion

### A. Jurisdiction

The government argues we lack jurisdiction over this appeal because the government sold the defendant properties, and retained control over the *res* is a prerequisite to our appellate jurisdiction. We disagree.

This court reviews jurisdictional issues de novo. *Mwasaru v. Napolitano*, 619 F.3d 545, 549 (6th Cir. 2010).

This court has jurisdiction over this appeal because the trial court had control of the defendant properties when the government initiated the forfeiture proceedings. The government's subsequent sale of the properties did not divest the court of jurisdiction.

The government seized the defendant properties and initiated civil forfeiture proceedings under 21 U.S.C. § 881(a)(7). "[I]t long has been understood that a valid seizure of the res is a prerequisite to the *initiation* of an *in rem* civil forfeiture proceeding." *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 84 (1992) (citing *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984)). Forfeiture proceedings under § 881 are modeled after proceedings in admiralty. *Id.* Thus, "'seizure of the RES, and the publication of the monition or invitation to appear, is regarded as equivalent to the particular service of process in the courts of law and equity.'" *Id.* at 84-85 (quoting *Taylor v. Carryl*, 61 U.S. (20 How.) 583, 599 (1858)).

In *Bank of Miami,* the Supreme Court expressly rejected the government's argument "that jurisdiction over an *in rem* forfeiture proceeding depends upon continued control of the res." 506 U.S. at 84-89. In that case, the government initiated an action seeking forfeiture of a single-family residence in Florida. *Id.* at 82. "The complaint alleged that Indalecio Iglesias was the true owner of

the property; that he had purchased it with proceeds of narcotics trafficking; and that the property was subject to forfeiture to the United States" under 21 U.S.C. § 881(a)(6). *Id*. The trial court found probable cause to seize the property, and the government issued a notice of the forfeiture proceedings. *Id*.

Republic National Bank of Miami filed a claim asserting it retained a lien interest of $800,000 in the property under a mortgage note. *Bank of Miami*, 506 U.S. at 83. The bank and the government entered into an agreement for sale of the property. *Id*. With court approval, the government sold the property for $1,050,000. *Id*. The United States Marshal retained the sale proceeds pending resolution of the case. *Id*. At trial, the court rejected the bank's claim to the property. *Id*. At the government's request, the Marshal transferred the sale proceeds to the Assets Forfeiture Fund of the United States Treasury. *Id*. The bank filed a timely appeal; the government moved to dismiss for lack of jurisdiction. *Id*. The Eleventh Circuit granted the motion, holding that removal of the res destroyed the court's jurisdiction. *Id.*; *United States v. One Single Family Residence Located at 6960 Miraflores Ave.*, 932 F.2d 1433 (11th Cir. 1991), *rev'd sub nom. Bank of Miami*, 506 U.S. at 87.

The Supreme Court reversed, stating that a jurisdictional rule requiring continued control of the *res* in an *in rem* proceeding "does not exist." *Bank of Miami*, 506 U.S. at 87. Rather, as when jurisdiction otherwise exists, such as by diversity of citizenship under 28 U.S.C. § 1332, it "survives a change in circumstances." *Id*. at 88. Thus, a party cannot avoid an appellate court's jurisdiction under § 1332 by changing his domicile, and a damages award at or under $75,000 does not divest an appellate court of jurisdiction over the appeal. *Id*. The Court therefore concluded that "[s]tasis is not a general prerequisite to the maintenance of jurisdiction[,]" and "in an *in rem* forfeiture action,

7

the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the res from the district." *Id*. at 88-89.

As in *Bank of Miami*, this court retains jurisdiction despite the fact the government has sold the property and deposited the proceeds in the forfeiture fund. The government initiated forfeiture proceedings against the defendant properties, and the trial court held that Butler lacked standing to contest the proceedings because he failed to answer the forfeiture complaint. The trial court thereafter entered a decree of forfeiture, and the government sold the defendant properties. The Marshal then released the sale proceeds to the forfeiture fund. This action did not divest this court of jurisdiction even though the *res* is no longer under the district court's control.[1]

## B. Standing

Butler argues the trial court erred in granting the government's motion for summary judgment on the basis that Butler failed to file a verified claim or answer, and therefore lacked statutory standing to contest the forfeiture. We reject Butler's argument and uphold the trial court's grant of summary judgment against him.

This court reviews a trial court's decision on a motion for summary judgment *de novo*. *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

As an initial matter, the trial court did not err in deciding, at the summary judgment stage, whether Butler lacked statutory standing to contest the proceedings. Supplemental Rule (G)(8)(c);

---

[1] In *Bank of Miami*, 506 U.S. at 91-96, the Court also rejected the government's argument that a court order requiring payment of funds from the forfeiture fund, under these circumstances, would violate the Appropriations Clause, U.S. Const., art. I, § 9, cl. 7.

*see also United States v. Certain Real Prop. Located at 16397 Harden Circle*, 145 F.3d 1334 (6th Cir. 1998) (upholding the trial court's grant of summary judgment in a forfeiture proceeding because claimant failed to establish standing).

To contest a forfeiture action, a claimant must establish statutory standing by complying with Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *United States v. Real Prop. Located at 4527-4535 Mich. Ave., Detroit, Mich.*, No. 11-1579, 2012 WL 2913735, at *3 (6th Cir. July 18, 2012); *see also United States. v. Thirty-Five Firearms*, 123 F. App'x. 204, 206 (6th Cir. 2005) (discussing statutory standing under the predecessor statute). Under Supplemental Rule G(5)(a)(i):

> A person who asserts an interest in the defendant property may contest the forfeiture
> by filing a claim in the court where the action is pending. The claim must:
> (A) identify the specific property claimed;
> (B) identify the claimant and state the claimant's interest in the property;
> (C) be signed by the claimant under penalty of perjury; and
> (D) be served on the government attorney designated [to receive notices].

A claimant must file a verified claim within thirty-five days after the government sends a forfeiture notice, and file an answer within twenty-one days after filing a verified claim. Supplemental Rules (G)(5)(a)(ii) and (G)(4)(b)(ii)(B)-(C). To have standing, a claimant must comply strictly with Supplemental Rule G(5). *United States v. One Men's Rolex Pearl Master Watch*, 357 F. App'x 624, 627 (6th Cir. 2009).

Butler's failure to file within the thirty-five day period divested him of statutory standing. *See United States v. $7,000.00 in U.S. Currency*, 583 F. Supp. 2d 725, 735 (M.D.N.C. 2008) (striking claimant's filing as untimely and dismissing his claim for lack of statutory standing.). Under Supplemental Rule G(5), Butler had thirty-five days from the date the government sent him

notice of the forfeiture action to file a verified claim. Butler received notice of the claim around January 22, 2007, and thus had, at the latest, until February 26, 2007, to file his verified claim.[2] The trial court received Butler's first filing on February 28, 2007. Butler also failed to file thereafter any document purporting to answer the complaint. Butler therefore failed to comply with Supplemental Rule (G)(5), and the trial court properly granted the government summary judgment.

Alternatively, Butler's claim fails substantively because, as the trial court stated, "[n]o matter how liberally construed," Butler's filings cannot be considered a verified claim or answer. Butler filed several rambling, incoherent documents that failed to meet the Supplemental Rule (G)(5) requirements. Specifically, in his February 28, 2007, filing, Butler claimed ownership of the defendant properties but he failed to swear to the document's accuracy under penalty of perjury. In his March 30, 2007, filing, Butler failed to make any claim to the properties, although he did swear to the document's accuracy and truth under penalty of perjury. Because Butler failed to satisfy the Supplemental Rule G(5) requirements in any filing, the trial court properly granted summary judgment against Butler for failing to respond properly to the complaint. *See One Men's Rolex Pearl Master Watch*, 357 F. App'x at 627-628 (holding that appellant's claim was properly dismissed because he did not swear to it under penalty of perjury).

Butler urges this court to construe the trial court's order as a default judgment, which this court may set aside under Fed. R. Civ. P. 55. This court has previously held that courts should readily consider setting aside default civil forfeiture judgments when the claimant establishes he

---

[2] The trial court stated Butler received a "Notice of Procedure to Contest Forfeiture" on January 17, 2007. It thus determined that Butler was required to file a claim by February 21, 2007. However, the court also stated Butler received notice of the forfeiture complaint on January 22, 2007. In any event, Butler failed to file any document within thirty-five days of the latter document.

lacked actual notice of the proceedings and otherwise attempted to comply with Supplemental Rule G. *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 324 (6th Cir. 2010) (holding that courts should use the Rule 55(c) test for setting aside default judgments when a known claimant files a "technically compliant but untimely verified claim and answer, without regard to the Supplemental Rule G cases.").

Butler does not present such a case. He knew of the proceedings from the time the government filed its complaint, but failed to file a verified claim to the property or answer the complaint. *See $22,050.00 U.S. Currency*, 595 F.3d at 323 n.5 ("The Supplemental Rule G cases [requiring strict compliance dealt] with a response that is timely filed but is technically deficient for some reason."); *see also In re Seizure of $143,265.78 from Checking Account No. 1851349546 & $28,687.40 from Checking Account No. 1080022185,* 384 F. App'x 471, 474 (6th Cir. 2010) ("[Claimant] is not entitled to set aside the forfeiture because [it] knew of the seizure of the funds within sufficient time to file a timely claim.").

As the trial court noted, Butler's filings were wholly deficient under Supplemental Rule G. Because Butler's filings were untimely and did not meet the Supplemental Rule G(5) requirements, he lacks statutory standing to appeal the forfeiture proceedings.

For the foregoing reasons, we **AFFIRM** the trial court's order granting the government's motion for summary judgment.

11