**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0773n.06

**No. 11-1579**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jul 18, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA,          ) | |
|         ) | **ON APPEAL** FROM THE |
|     **Plaintiff-Appellee,**        ) | UNITED STATES DISTRICT |
|         ) | COURT FOR THE EASTERN |
| v.          ) | DISTRICT OF MICHIGAN |
|         ) | |
| REAL PROPERTY LOCATED AT 4527-4535  ) | **O P I N I O N** |
| MICHIGAN AVENUE, DETROIT, MICHIGAN.  ) | |

UNITED STATES OF AMERICA,

    **Plaintiff-Appellee,**

v.

REAL PROPERTY LOCATED AT 4527-4535
MICHIGAN AVENUE, DETROIT, MICHIGAN.

    **Defendant,**

and

DANIEL HILL, et al.,

    **Claimants-Appellants.**

**ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**O P I N I O N**

**BEFORE: BOGGS, NORRIS, and KETHLEDGE, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** Claimants, members of a Detroit motorcycle club, appeal from the district court's grant of the government's motion to strike their claims challenging the civil forfeiture of the club's real property. Specifically, the claimants argue that they have Article III standing to challenge the forfeiture because they paid monthly dues to the club with the understanding that they were acquiring a small ownership interest in its real property. In addition, two of the club's officers, both purporting to be its president, argue that they have standing to contest the forfeiture on behalf of the club.

**I.**

The government, in connection with a criminal proceeding,[1] filed an amended complaint for the civil forfeiture of real property located at 4527-4535 Michigan Avenue, Detroit, Michigan. The property, commonly known as "the clubhouse," was owned by a Michigan not-for-profit corporation, the Highwaymen Motorcycle Club ("HMC"), also known as Detroit Highwaymen Incorporated ("DHI"). The government alleged that the clubhouse was forfeitable under 21 U.S.C. § 881(a)(7) because HMC members had used the property in the commission of drug-trafficking offenses.

Fifteen members of the HMC filed a joint claim challenging the forfeiture, alleging that they were collectively "the owners" of the clubhouse.

The government responded that the claimants lacked Article III standing because they had failed to allege "a colorable ownership, possessory or security interest in at least a portion of the defendant property." Because the owner of record for the clubhouse was DHI (or HMC) as an entity, not the individual claimants, the government contended that the claimants' memberships in HMC and their use of the clubhouse were insufficient to create a colorable interest in the property. In support, the government attached a quitclaim deed and title search for the property, both listing DHI as the owner. The government also attached the DHI constitution, which did not refer to the club's real property, beyond providing for a $500 fine and an "[a]ss kicking" for "[a]ny member that tears up anything in the CLUBHOUSE."

---

[1] *United States v. Aref Nagi, et al.*, No. 06-20465 (E.D. Mich. 2011).

The claimants replied that they had constitutional standing because "there is evidence that they made payments toward the property with the belief that they were acquiring an ownership interest in the property." Alternatively, the claimants, at least two of whom were officers of DHI, argued that they had standing to challenge the forfeiture "as agents for and on behalf" of the organization.

In support, the claimants attached amended claims, in the form of affidavits, from eight of the original signatories, each attesting that he was a member of the HMC and had paid monthly dues of $50-$80 in the belief that he was obtaining a small individual interest in the clubhouse.[2] Terry Earls and Jarold Helter, neither of whom was a named party or signatory to the original claim, also attached affidavits, both asserting an interest in the clubhouse "on behalf of the HMC as its President."

Following a short hearing, the district court granted the government's motion to dismiss or strike these claims based on lack of Article III standing. The court explained that "a paying membership and the holding of office in a motorcycle club were insufficient to demonstrate ownership, that is a colorable interest in the clubhouse and parcel of land owned by and deeded to the club." The court noted that "[t]here's nothing in the constitution which would suggest that the members have any ownership interest, there is no deed, there's nothing."

---

[2] Specifically, each claimant stated: "When I paid these dues I believed that I was obtaining an individual interest, albeit a small one in the property now the subject of this case."

**II.**

In order to contest a governmental forfeiture action, as in any action brought in federal court, a claimant must have Article III standing. *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998). We review *de novo* the district court's determination of a claimant's standing to contest a federal forfeiture action. *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009) (discussing criminal forfeiture). In so doing, we accept as true all material allegations contained in the claim and liberally construe them in favor of the claimants. *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004).

To satisfy the Article III standing requirement, the claimant must allege a colorable ownership, possessory, or security interest in at least a portion of the defendant property. *$515,060.42*, 152 F.3d at 497. We have declined "to adopt any type of hard-and-fast requirement for the initial evidentiary showing necessary for standing." *Id.* at 498. Generally, we look to "the law of the jurisdiction that created the property right to determine the petitioner's legal interest." *Salti*, 579 F.3d at 668 (quoting *United States v. Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 125 (E.D.N.Y. 2006)).

Here, the claimants failed to allege a colorable interest in the clubhouse and their claim was therefore subject to dismissal for lack of Article III standing. In the affidavits of the original eight signatories, which we assume without deciding were properly construed below as amended claims, each claimant stated only that he paid monthly dues to DHI *in the belief* that he was obtaining a small ownership interest in the clubhouse. This allegation, even when taken as true, is insufficient to

support the existence of a colorable property interest. Michigan law determines the property interests of these claimants and, under that state's statute of frauds, an interest in real property can only be created "by act or operation of law, or by a deed or conveyance in writing." Mich. Comp. Laws § 566.106. Here, as noted by the district court, no such writing exists. The deed to the clubhouse lists only DHI as the owner and the claimants do not allege that any other writing exists as a basis for their claim of a property interest. In sum, the claimants cannot allege a colorable interest in the real property based merely upon their belief that they have one.

## III.

Terry Earls and Jarold Helter, the self-described Presidents of the HMC, also challenge the forfeiture of the clubhouse "on behalf of the HMC as its President." While the district court did not separately address these claims, and thus dismissed them based solely on Article III standing, we may affirm the district court's decision on any grounds supported by the record. *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007).

First, Earls's and Helter's claims fail because they were untimely. The government first published notice of the forfeiture action on the official government website on October, 27, 2010, triggering Federal Rule of Civil Procedure Supplemental Rule G(5)(a)(ii)(B)'s sixty-day filing period.[3] This period expired on December 26, 2010, and Earls's and Helter's claims were not filed until January 18, 2011.

---

[3] The Rules of Civil Procedure applicable to civil forfeiture actions are codified in the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, primarily in Supplemental Rule G.

Generally, under Federal Rule of Civil Procedure 15(c)(1), an amended pleading relates back to the date of the original pleading where "it asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The claims of Earls and Helter, however, cannot be considered "amendments" entitled to relation back because neither Earls nor Helter was a party to the original claim.

In addition, Earls and Helter lacked statutory standing to bring these claims, because they did not comply with Supplemental Rule G. *See $515,060.42*, 152 F.3d at 497 (noting that compliance with the Supplemental Rules is necessary to establish statutory standing). While Supplemental Rule G does not itself require an agent to state his authority to act on behalf of another, it incorporates such a requirement through reference to Supplemental Rule C.[4] Under Supplemental Rule C(6)(a)(iii), "an agent, bailee, or attorney *must state the authority* to file a statement of right or interest on behalf of another." (emphasis added). Here, Earls and Helter failed to identify any such authority.

## IV.

The judgment is **affirmed**.

---

[4] Supplemental Rule G explains that, "[t]o the extent that this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply." Supp. R. G(1).