In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3414

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

$196,969.00 UNITED STATES CURRENCY,

*Defendant.*

RODNEY JOHNSON,

*Claimant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 2:11-cv-00237-JMS-DKL—**Jane E. Magnus-Stinson**, *Judge.*

ARGUED APRIL 3, 2013—DECIDED JUNE 11, 2013

Before POSNER, WOOD, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* This is a companion case to *United States v. Funds in the Amount of $574,840*, No. 12-3568, also decided today, also involving civil forfeiture of property connected to criminal activity.

In the present case Indiana police recovered a large amount of cash in a search of the home of a suspected

drug dealer named Rodney Johnson. The state turned over the money to the federal government for forfeiture proceedings—a common practice, resulting in a division of the spoils between state and federal government when the proceedings are successful. See 21 U.S.C. § 881(e); David Pimentel, "Forfeitures Revisited: Bringing Principle to Practice in Federal Court," 13 *Nev. L.J.* 1, 14 n. 75 (2012); Eric Moores, Note, "Reforming the Civil Asset Forfeiture Reform Act," 51 *Ariz. L. Rev.* 777, 794-95 (2009). In Indiana, where this case arose, the state constitution requires that "fines assessed for breaches of the penal laws of the State . . . [and] all forfeitures which may accrue" must be paid into the Common School fund, which finances education rather than law enforcement. Ind. Const. art. 8, §§ 2, 3. By inviting the federal government to conduct civil forfeiture relating to criminal cases in the Indiana state courts, local and state law enforcement can receive a substantial share of the forfeited criminal proceeds and avoid (or at least try to avoid) having to pay any of it into the Common School fund.

So the Justice Department filed a forfeiture suit, pursuant to 18 U.S.C. § 983(a)(3) and Supplemental Rule G(2) (one of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; the supplemental rules are part of the Federal Rules of Civil Procedure). The government alleges that the cash found in Johnson's home was proceeds of illegal drug activity and therefore subject to forfeiture. 21 U.S.C. § 881(a)(6). It notified Johnson that he could contest forfeiture by filing a verified claim pursuant to Supple-

mental Rule G(5). He filed a claim, the nub of which is that "as a legal occupant of the house I have rights of ownership to all items found within the house," including the cash.

The government moved the district court to strike the claim on the ground that it failed to establish Article III standing and also failed to comply fully with Supplemental Rule G(5), which a claimant to property that the government is seeking forfeiture of must also do. 18 U.S.C. § 983(a)(4)(A). Without reaching the issue of Article III standing (though Article III standing is prior to any statutory issue), the district judge ruled that Johnson's claim did not comply fully with the requirements of Rule G(5)(a)(i). So the judge dismissed the claim and ordered forfeiture.

All that (a)(1) requires is that the claim be signed under penalty of perjury, served on the government, and "identify the specific property claimed [and] . . . the claimant and state the claimant's interest in the property." But quoting an unpublished district court opinion, *United States v. $134,750 U.S. Currency*, No. RWT 09 cv 1513, 2010 WL 1741359, at *3 (D. Md. Apr. 28, 2010), the judge held that to comply with the rule the claimant must state in addition "how he obtained possession of the currency, including, but not limited to, the person(s) from whom he received the currency, the date of receipt, the place of the receipt, and a description of the transaction which generated the currency." Johnson had stated none of these things; his claim had failed, the district judge (in this case) added, "to even assert that Mr. Johnson is the

lawful owner of the property. And even if it were construed as an assertion of ownership, such a bald assertion of interest does not strictly comply with" the rule. Actually the "bald assertion" would strictly comply with the rule; the additional assertions required by the judge have no basis in it.

In defending the judge's analysis and conclusion the government adds that Johnson "also fails to meet his burden to establish Article III standing. In order to meet this burden, a claimant must show that they [*sic*] have a colorable legal interest in the claimed property." That is incorrect. The government has confused the requirement of pleading Article III standing, which in a case such as this requires no more than alleging that the government should be ordered to turn over to the claimant money that it's holding that belongs to him, with the additional requirements imposed on claimants in civil forfeiture proceedings by Rule G(5). But Johnson's claim satisfied those requirements as well. Because the claim was verified it was evidence, like an affidavit. The government was free to respond with evidence that Johnson had no rights in the money but it could not simply demand that he prove, beyond the claim itself if compliant with Rule G(5), that he had standing—especially that he "prove" Article III standing. Imagine what it would do to federal litigation to require every plaintiff (or claimant in a forfeiture suit, who is like a plaintiff) not only to allege, but to prove, facts establishing the district court's constitutional authority to decide his case. That is not required. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).

There is a further puzzle, though one unnecessary to solve in this case, or perhaps in any case under the Civil Asset Forfeiture Reform Act. The district court's jurisdiction over the forfeiture suit is unquestionable; and a separate basis of jurisdiction is not required for a defense—a court that has jurisdiction over a case has jurisdiction over the defenses. The wrinkle in this case is that a claimant in a forfeiture suit is not a defendant. The suit is *in rem* (Latin for "against a thing")— the defendant is a thing, in this case cash. See Rule G(6)(a). Maybe therefore the claim should be considered not a defense but a suit nested within the forfeiture suit. No matter; satisfaction of the requirements that Rule G(5) imposes on the claimant establishes the claimant's standing under Article III *a fortiori*, for the rule requires more than the simple allegation of standing that, unless challenged, is all that Article III requires.

The only subsection of Rule G(5) invoked by either the district judge or the government in opposing Johnson's claim is the one (G(5)(a)(i)(B)) requiring the claimant to state his interest in the property sought to be forfeited. The idea that strict compliance with this subsection, assuming that strict compliance with it is necessary, means strict compliance with its amplification by a distant district judge baffles us. Strict compliance is achieved if the claimant states his interest, which Johnson did. We can't see what additional requirements can be extracted from the terse and crystalline language of the subdivision on which the government and the district court place their entire reliance.

The government argues that "forcing the claimant to spell out his interest in the property at the outset not only discourages false claims, but allows the parties to focus directly on the interest that is asserted in their discovery requests." This is an argument for amending the rule, which does not require "spelling out," rather than for judicial elaboration of it. Anyway we are given no grounds for thinking that a claimant's failure to particularize the nature of his claimed interest beyond what Rule G(5) requires burdens the government or the courts unduly. The government can depose the claimant or serve an interrogatory on him without leave of court, as expressly authorized by Rule G(6)(a). If the claimant is unresponsive, the government can move for dismissal of the claim and for entry of a judgment of forfeiture. And the judge can shortcut the entire process without impropriety by asking the claimant to clarify his claim.

In places in its brief the government hints at an argument that it doesn't actually make, which is that the problem with Johnson's claim is not that it doesn't comply with Rule G(5) but that it's frivolous. Remember what the claim says: "as a legal occupant of the house I have rights of ownership to all items found within the house." The implication is that just by virtue of being a legal occupant of a house or other residence one owns everything in it, though perhaps the right is shared with someone else—for Johnson claims "rights of ownership" rather than "ownership" *simpliciter*. Nevertheless, taken literally the claim is preposterous. If you visit a lawful occupant of a home, does he have "rights

of ownership" in your watch? Your clothing? Does a child have "rights of ownership" in all the property in his home, including his father's toupée? Maybe Johnson just meant that he happens to own everything in his house. But if instead he is claiming that occupancy signifies rights of ownership of everything in his residence, that as we say is preposterous. The claim is thus unclear—a valid basis for objection by the government.

Johnson was represented by counsel when he filed his claim, so maybe he and his lawyer were just trying to be coy, in order to minimize the likelihood of a perjury charge should it turn out that the cash is indeed contraband.

The judge could have dismissed the claim when she received it and before the government objected to it, on the ground that, read literally, it was frivolous and if not read literally its meaning was obscure. True, parties usually get a chance for a do-over of a complaint that fails to state a claim but may be reparable. *Kamelgard v. Macura*, 585 F.3d 334, 339 (7th Cir. 2009); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1435 (3d Cir. 1997); Advisory Committee Notes to Rule G(8)(c); 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, pp. 733-43 (3d ed. 2004). But this was Johnson's second try, and if there is little prospect of his correcting the error on a third try dismissal with prejudice would be proper. Whether to give him a third try we leave to the district judge to decide in the first instance. But because the ground for dismissal given by the judge and the alternative ground

argued by the government in this court are unsound, the judgment is

REVERSED AND REMANDED.