RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0219p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 16-4279

$31,000.00 IN U.S. CURRENCY, et al.,

*Defendants,*

TAIWAN WIGGINS; DALANTE ALLISON,

*Claimants-Appellants.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:16-cv-01581—Patricia A. Gaughan, District Judge.

Decided and Filed: September 20, 2017

Before: COLE, Chief Judge; BATCHELDER and MOORE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** James R. Willis, Cleveland, Ohio, for Appellants. Phillip J. Tripi, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge. The federal law governing civil in rem forfeiture actions gives the government authority to seize items it suspects were used in furtherance of criminal activity and to commence civil in rem proceedings against the property without charging the property's owner with a crime. *See United States v. Seventeen Thousand*

*Nine Hundred Dollars ($17,900.00) in U.S. Currency*, 859 F.3d 1085, 1087 (D.C. Cir. 2017) (explaining the practice of civil forfeiture); *see also Leonard v. Texas*, 137 S. Ct. 847, 848–49 (2017) (Thomas, J.) (statement respecting the denial of certiorari) (describing some abuses in the administration of civil forfeiture laws in the United States and questioning the constitutionality of such laws). Federal agents and entities have significant latitude to pursue these claims, from special discovery provisions written into the governing rules to a burden of proof that is lower than required in standard criminal cases. But this latitude has its limits, and this case requires us to define some of these limits. The district court granted the government's motion to strike Taiwan Wiggins's and Dalante Allison's claims to currency seized from each man at the Cleveland Hopkins International Airport. Each man's claim asserted that he owned the currency that had been taken from his suitcase. The district court recited the facts as alleged by the government, found that each claim presented "nothing more than a naked assertion of ownership," and held that, under Sixth Circuit precedent, Wiggins and Allison lacked the standing necessary to pursue their claims.

In many ways, this civil forfeiture action looks routine, for federal courts have developed well-settled principles concerning a forfeiture claimant's need to demonstrate both Article III and statutory standing. But this case comes to us in a procedural posture unlike most civil forfeiture actions—the government apparently moved to dismiss the claim before it engaged in any discovery. Its basic argument before the district court and on appeal is that the claimant's pleadings must do more than assert a bare ownership in the *res* that is subject to forfeiture, and that the claimant's pleadings must provide the government sufficient detail to draft interrogatories allowing it to test the claimant's claim of ownership. As we will explain, the procedural rules governing civil forfeiture actions do not demand such a heightened standard. Accordingly, we REVERSE the district court's order granting the government's motion to strike the claim and REMAND for further proceedings.

## I. BACKGROUND

The parties dispute most of the facts underlying this action. We begin where they find common agreement, drawing these details from the pleadings. On February 24, 2016, Taiwan Wiggins and Dalante Allison (together, "claimants") were each at the Cleveland Hopkins

International Airport for a flight to Orange County, California. The Drug Enforcement Administration (DEA) was aware of the claimants' itineraries and that each had previous felony drug convictions. The DEA observed them at the airport engaging in conversation before they walked together toward the security checkpoint. Beyond this, the government's complaint and the claimants' answers and claims tell very different stories.

### A. *Wiggins*

The government alleges that Wiggins spoke voluntarily with a DEA agent who had approached him after he passed through airport security. Wiggins stated that he owned a company named "Wiggins Cleaning," but he could name only one client of his cleaning and construction services, "Mike and Mike." A DEA agent asked if Wiggins was carrying any bulk currency, and Wiggins told the agents that he had $2,000 in a shoe in his bag. After Wiggins consented to a search, the agents found $31,000 hidden in the lining of his suitcase. He could not answer why he was traveling with that sum of money and, at some point, said it was earnings from Wiggins Cleaning. He seemed to be startled at the agents' discovery, claimed to be traveling alone, and denied knowing Allison.

In his answer, Wiggins denied these facts. He specifically stated that neither his discussion with the DEA agent nor the search of his suitcase was consensual.

### B. *Allison*

The government alleges that while the DEA questioned Wiggins, Allison walked by, glaring at the agents. He joined a long line at Starbucks a mere ten minutes before his scheduled flight time and quickly jumped out of line when the gate agent paged him. He rushed down the jet way, but a Homeland Security Investigations agent asked the gate agent to ask Allison to come back up the jet way to speak with him. Allison voluntarily spoke with agents, acknowledged that he was carrying currency, and agreed to wait for a DEA agent who had been speaking with other passengers. When the DEA agent approached him, he agreed to speak to him and consented to a search of his carry-on luggage. The agent found $10,000 in currency in a sock. Allison stated that he had won the money at a casino but could not provide details about the date when he had won it or the casino where he had played. He also stated that his employer

was "Jay's Cleaning Service," that he earned $35,000 annually, that he filed taxes annually, that he was travelling alone, and that he did not know Wiggins.

Like Wiggins, Allison filed an answer denying the relevant allegations by the government. He admits that he possessed $10,000, but he denies that he consented to the search of his carry-on luggage.

### C. Additional Factual Background

After the claimants allegedly allowed the DEA to search their bags, a canine alerted to the odor of narcotics on "the separate boxes containing each of the defendant currencies." The government thereafter seized the funds. In its complaint, the government further alleges that the DEA could not locate business filings for Jay's Cleaning, Wiggins Cleaning, or Mike and Mike, and that neither claimant filed state income tax returns for 2011–2015. Finally, the government alleges that the defendant currencies were forfeitable pursuant to 21 U.S.C. § 881(a)(6), as proceeds traceable to drug trafficking activities or that were used or intended to be used to facilitate drug-trafficking in violation of 21 U.S.C. §§ 841(a), 846.

Allison denies the allegations concerning the drug-sniffing dog and the lack of business filings for the three companies. Both Allison and Wiggins deny that they failed to pay taxes[1] and that the funds were forfeitable.

### D. Procedural History

The government filed its civil in rem forfeiture complaint on June 23, 2016, naming as defendants $31,000 in U.S. Currency and $10,000 in U.S. Currency. In response, Wiggins and Allison filed verified claims on July 6, 2016. Wiggins asserted an ownership interest in defendant $31,000 in U.S. Currency, and Allison did the same for defendant $10,000 in U.S. Currency. Beyond this difference, the two claims are substantially the same; in both, the claimants assert that the DEA conducted "a warrantless arrest and a warrantless search and seizure [in] the absence of probable cause." In addition, each alleged that "this Claim is further

---

[1]Wiggins adds that he may have been incarcerated for that period of time and "doubts" it can be shown that he was required to pay taxes.

based on the indisputable fact that as the person who is the sole and absolute owner, and who was in exclusive possession of the monies, I was victimized by an illegal arrest and I was victimized by the illegal seizure of the funds here involved." In the midst of further assertions that the government violated each man's constitutional rights, they each stated that "the funds [that] were forcibly taken from me . . . were in my possession."

Wiggins and Allison each filed an answer to the forfeiture complaint on July 20, 2016. The district court held a case management conference on August 12, 2016, at which the parties agreed upon a deadline for the completion of discovery.**2**

Less than a month later—well before the discovery deadline passed or any discovery was undertaken—the government moved to strike both claims. The district court found that Wiggins and Allison "lack[ed] standing because their claims are nothing more than a naked assertion of ownership." The district court also explained that "the government's motion put [them] on notice that their claims were deficient," yet "they did not seek to supplement them." Therefore, the district court struck the claims. The government subsequently moved for an order of forfeiture, which the district court granted on October 25, 2016. Wiggins and Allison timely appealed.

## II. ANALYSIS

### A. Standard of Review

Generally, we review "a district court's decision to strike a claim in an *in rem* forfeiture action for an abuse of discretion." *United States v. One 2011 Porsche Panamera*, 684 F. App'x 501, 506 (6th Cir. 2017) (citing *United States v. Thirty-Five Firearms*, 123 F. App'x 204, 205–06 (6th Cir. 2005) (per curiam)); *see also United States v. $22,050 U.S. Currency*, 595 F.3d 318, 322 (6th Cir. 2010). However, "[w]e review *de novo* the district court's determination of a claimant's standing to contest a federal forfeiture action." *United States v. Real Prop. Located at*

---

**2** In its brief, the government claims that at this conference, it "stated that the government intended to file a motion to strike the claims based upon the bare assertion of ownership unless the claims were supplemented with additional detail about the origin and circumstances under which appellants acquired the seized currencies." Gov't Br. at 5. This assertion is not supported by the report from the parties' planning meeting, and neither the report nor the resulting case management order imposed any deadline by which the claimants needed to amend their claims.

*4527-4535 Michigan Ave., Detroit, Mich.*, 489 F. App'x 855, 857 (6th Cir. 2012) (citing *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009) (discussing criminal forfeiture)). "In so doing, we accept as true all material allegations contained in the claim and liberally construe them in favor of the claimants." *Id.* (citing *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004)).

### B. Supplemental Rule G

Because this case presents an issue of first impression in this circuit, we discuss the applicable procedural rules and case law in some detail.

#### 1. Text of the Rule

The rules governing civil in rem forfeiture actions are found in 18 U.S.C. § 983 and Rule G of the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Civil Forfeiture Actions (the "Supplemental Rules"). *See United States v. $506,069.09 Seized from First Merit Bank*, 664 F. App'x 422, 433 (6th Cir. 2016). Rule G details various procedures with which parties to an in rem forfeiture action must comply.

Rule G(2) requires, among other things, that the government file a verified complaint that "describe[s] the property with reasonable particularity," "identif[ies] the statute under which the forfeiture action is brought," and "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Rule G(2)(a)–(f).

Rule G(5) outlines how a claimant may become a part of the case and requires a would-be claimant to file two pleadings. Rule G(5)(a) states that anyone "who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Rule G(5)(a)(i). The claim must "identify the specific property claimed," "identify the claimant and state the claimant's interest in the property," "be signed by the claimant under penalty of perjury," and be served on the government in the specified way. Rule G(5)(a)(i)(A)–(D). "The verification requirement of Supplemental Rule G is particularly important because it helps 'prevent the danger of false claims in forfeiture proceedings by informing the court on oath or affirmation that the claimant is entitled to contest the forfeiture action by virtue of his interest

in the defendant property.'" *United States v. One Men's Rolex Pearl Master Watch*, 357 F. App'x 624, 627 (6th Cir. 2009) (quoting *United States v. Currency $267,961.07*, 916 F.2d 1104, 1108 (6th Cir. 1990)).

Additional provisions in Rule G(5) set the timelines for filing a claim and provide a specific pleading rule for those asserting an interest in the property as a bailee. Rule G(5)(a)(ii)–(iii). Rule G(5)(b) gives the claimant twenty-one days to file an answer or a motion under Rule 12 of the Federal Rules of Civil Procedure.

Once a party has filed a claim, Rule G(6) gives the government authority to "serve special interrogatories . . . at any time after the claim is filed and before discovery is closed." Rule G(6)(a); *see United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 635 (9th Cir. 2012) (describing this limited discovery power as one that is "unlike" what usually occurs "in typical civil proceedings"). These special interrogatories are "limited to the claimant's identity and relationship to the defendant property." Rule G(6)(a); *see also $133,420.00 in U.S. Currency*, 672 F.3d at 635 ("The purpose of the rule is 'to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing.'" (quoting Supplemental Rule G advisory committee's note (subdiv. (6)))). The claimant must answer or object to the special interrogatories within twenty-one days of service. Rule G(6)(b).

Rule G(8) creates four motions and one petition applicable in in rem forfeiture actions. Rule G(8)(a) allows a party "with standing to contest the lawfulness of the seizure" of the defendant property to "move to suppress use of the property as evidence." Rule G(8)(b) allows "[a] claimant who establishes standing to contest forfeiture [to] move to dismiss the action under [Federal Rule of Civil Procedure] 12(b)." Rule G(8)(c) provides that "[a]t any time before trial, the government may move to strike a claim or answer" either (a) "for failure to comply with Rule G(5) or (6)," or (b) "because the claimant lacks standing." Rule G(8)(c)(i)(A)–(B). The Rule further provides that a motion to strike must be decided before a claimant's motion to dismiss, and "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Rule G(8)(c)(ii)(A)–(B).

2. Relevant Case Law

Our cases are clear with regard to a claimant's need for standing to challenge a forfeiture action. In this regard, we have distinguished between Article III standing and statutory standing.

As in any federal suit, a claimant must have Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum of standing" requires (1) an "injury in fact," defined as the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks and citations omitted). As the Supreme Court noted in *Lujan*, constitutional standing requires that "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*; *see also $133,420.00 in U.S. Currency*, 672 F.3d at 638 (applying the *Lujan* rule in a civil forfeiture proceeding); *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008).

We have assessed Article III standing in civil forfeiture cases by requiring that "a claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property." *See United States v. $515,060.42 in U.S Currency*, 152 F.3d 491, 497 (6th Cir. 1998); *see also United States v. Real Prop. Located at 4257-4535 Michigan Ave., Detroit, Mich.*, 489 F. App'x 855, 857 (6th Cir. 2012). A claimant with such an interest has Article III standing "because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *$515,060.42 in U.S. Currency*, 152 F.3d at 497.

We have applied this principle in only a smattering of cases. For instance, in *Real Property Located at 4527-4535 Michigan Ave.*, the district court granted a motion to strike for failure to establish Article III standing. 489 F. App'x at 857. There, fifteen members of a motorcycle club filed a claim challenging the forfeiture of their clubhouse located at the defendant property, which was owned by a not-for-profit corporation. *Id.* at 856. The

government argued that the club members lacked Article III standing, adducing a quitclaim deed and a title search that listed the corporation, and not the individuals, as the owners. *Id.* The claimants argued that they believed they had been acquiring an ownership interest in the property through the payment of their membership dues. *Id.* at 856–57. We affirmed the district court's holding that the individual claimants failed to allege Article III standing. *Id.* at 857. The claimants alleged that they had been paying dues "in the belief" that they would obtain an interest in the property, but in the absence of a writing validating that belief, Michigan's statute of frauds precluded the claim. *Id.*

Similarly, in *United States v. $677,660.00 in U.S. Currency*, 513 F. App'x 531 (6th Cir. 2013) (per curiam), we affirmed the district court's finding that a claimant did not have Article III standing after a hearing "to resolve credibility issues" arising in the face of "contradictory evidence." *Id.* at 532. The claimant there had told shifting stories about the origin of the funds to be forfeited, ranging from claiming that an undocumented alien had given the funds to her, to denying that she owned the money, to claiming that she owned some of it. The inconsistency was crucial to the finding of a lack of standing. *Id.* at 533 ("Crumpler's constantly changing stories and her inability to verify any interest in the money justified the district court's finding that Crumpler had no credible legal interest in the currency.").

Notably lacking from any of the cases addressing Article III standing is a case that finds Article III standing by looking at Rule G(5)(a)(i)(B)'s requirement that a claim "identify the claimant and state the claimant's interest in the property."

In addition to demonstrating Article III standing, we also require a claimant to comply with Rule G in order to establish statutory standing. *See United States v. Real Props. & Premises*, 521 F. App'x 379, 384 (6th Cir. 2013); *Real Prop. Located at 4527-4535 Mich. Ave., Detroit, Mich.*, 489 F. App'x at 858 (citing *$515,060.42 in U.S. Currency*, 152 F.3d at 497 (providing for same standard under previous Supplemental Rule C)). A single deviation from the statute's requirements deprives a claimant of statutory standing. *See, e.g., One 2011 Porsche Panamera*, 684 F. App'x at 506–08 (striking a claim for failure to file a timely answer).

*C. Application*

We begin our analysis by noting that the government moved to strike the claim pursuant to Rule G(8)(c)(i)(A), but not Rule G(8)(c)(i)(B). The former ground for striking a claim is based on failure to comply with Rule G(5) or Rule G(6); the latter is based on a claimant's lack of standing. Rule G(5) details how a claimant must file his claim and his answer, and Rule G(6) describes the procedure for the exercise of the government's power to serve special interrogatories. The government does not claim that it served interrogatories, nor does our review of the record find that the government ever served special interrogatories. Therefore, we limit our analysis to whether the claimants failed to comply with Rule G(5). As just stated, a claimant must comply with these procedural rules to establish "statutory standing." And as we will demonstrate below, the claimants here have complied with the procedural rules, so it was error for the district court to strike the claim.

Rule G(5) provides that "[a] person who asserts an interest in the defendant property may contest the forfeiture by filing a claim . . . [that] must . . . identify the claimant and state the claimant's interest in the property." Rule G(5)(a)(i)(B). The district court stated that "[b]ecause of the danger of false claims, a claimant cannot satisfy Rule 5(G)(a)(i) with a conclusory statement of ownership." Consequently, it held that under either Article III or the statutory requirements, "it is clear that Wiggins and Allison lack standing because their claims are nothing more than a naked assertion of ownership." On appeal, the government asks us to affirm this holding, relying on our precedent requiring strict compliance with the dictates of Rule G(5) and arguing that the district court properly found that the claimants failed to comply with this provision.

The government's interpretation of Rule G(5) is incorrect. Although it rightly notes that Rule G(5)(a)(i) "sets forth certain minimum requirements," it argues that the claim at issue failed to satisfy those requirements because "each claim made only a naked assertion of ownership/possession, and failed to provide any explanation or contextual information regarding [the claimants'] relationship to the defendant U.S. currency found in their luggage." Gov't Br. at 8-9. The government and the district court cite to no binding precedent supporting this approach, however, and Rule G does not require a claimant to provide "any explanation or contextual

information." Article III standing may require some contextual information for a possessory interest, but even that is distinct from the assertion of an ownership interest. *Cf. United States v. 1978 Cessna Turbo 210*, 182 F.3d 919, 1999 WL 407469, at *4 (6th Cir. 1999) (unpublished table opinion) ("[T]he test for standing to contest forfeiture is that the claimant have a 'colorable ownership interest' which can be evidenced by several interests—actual possession, control, title, and financial stake.").

Rule G(5) requires claimants to do no more than identify themselves and state their interest in the property subject to forfeiture. The government, on the contrary, wants claimants to provide additional detail, a position that it attempts to justify as a means to ward off false claims and to give it a starting point to draft its special interrogatories pursuant to Rule G(6). Nowhere in the text of Rule G do we see any support for this approach, and our case law demonstrates why it is not necessary. First, the would-be claimant must demonstrate Article III standing, which, at the pleading stage, necessarily requires that the claimant allege the facts necessary to satisfy *Lujan*'s "irreducible constitutional minimum of standing." *See Lujan*, 504 U.S. at 560. Second, a claimant's ability to proceed under Rule G, which we have called "statutory standing," is satisfied through mere compliance with the rule, *see Real Props. & Premises*, 521 F. App'x at 384, and we see no persuasive reason to import a heightened pleading standard that has no basis in the text. And third, we have held that Rule G's verification requirement is a built-in preventative measure that limits the danger of false claims. *One Men's Rolex Pearl Master Watch*, 357 F. App'x at 627.

We agree with the Seventh Circuit's approach to cases in a procedural posture like this one, where the claimant has asserted an ownership interest in the *res* and the government moves to strike the claim based solely on the pleadings. *See United States v. $196,969.00 in U.S. Currency*, 719 F.3d 644 (7th Cir. 2013). There, state police seized cash from a suspected drug dealer's home, and the United States government filed a forfeiture suit that alleged that the cash was proceeds from illegal drug activity. *Id.* at 645. The claimant's claim asserted that he owned all the property in his home, including the defendant funds. As it did here, the government immediately moved to strike the claim, but unlike here, the motion was "on the ground that [the claim] failed to establish Article III standing and also failed to comply fully with Supplemental

Rule G(5)." *Id.* The district court ruled that the claim failed to comply with the statutory requirements, and without reaching Article III standing, struck the claim. *Id.* at 646 ("[T]he judge held that to comply with the rule the claimant must state in addition 'how he obtained possession of the currency, including, but not limited to, the person(s) from whom he received the currency, the date of receipt, the place of the receipt, and a description of the transaction which generated the currency.'" (quoting *$134,750 U.S. Currency*, 2010 WL 1741359, at *3)).

The Seventh Circuit reversed, holding that compliance with Rule G(5) provides no basis for "the additional assertions required by" the district court, and that a "bald assertion" of ownership complies with the rule. *Id.*; *see also id.* at 647 ("Strict compliance is achieved if the claimant states his interest, which Johnson did. We can't see what additional requirements can be extracted from the terse and crystalline language of the subdivision on which the government and the district court place their entire reliance."). The Seventh Circuit also responded to the government's argument that the claimant failed to demonstrate a colorable legal interest. *Id.* "The government has confused the requirement of pleading Article III standing, which in a case such as this requires no more than alleging that the government should be ordered to turn over to the claimant money that it's holding that belongs to him, with the additional requirements imposed on claimants in civil forfeiture proceedings by Rule G(5)." *Id.* The claimant had filed a verified claim—"like an affidavit"—asserting ownership, so the government could not demand that the claimant prove standing. *Id.*

We agree with the Seventh Circuit that this is the right way to approach standing issues in Rule G cases. At the pleading stage, a verified claim of ownership is sufficient to satisfy Article III and the procedural requirements of Rule G. *See id.*; *see also United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 643 (7th Cir. 2015) ("[S]atisfying procedural requirements—not demonstrating 'legitimate' ownership—is all that Rule G asks of claimants aside from showing constitutional standing."). Here, where the government alleged that it took a bundle of cash from a claimant's suitcase, and each claimant stated that he owned the cash, there is a clear allegation of ownership that satisfies Article III. And the claimant's making of such a statement

is what satisfies Rule G's statutory standing requirement.  Therefore, at least at this stage in the litigation, there was no basis on which the district court could strike the claim.[3]

The government sings a sirens' song about the value of high pleading standards and the benefits it will receive from forcing claimants to support their claims from the outset of a forfeiture proceeding.  But all of the government's arguments rest on flawed assumptions about the procedural rules governing in rem forfeiture cases.  The basis for requiring a claimant to provide factual support and context for its claim appears to stem from a few district court cases within our circuit, including another case from the Northern District of Ohio.  That case held that, "[b]ecause of the danger of false claims, Rule G(5)(a)(i) is not satisfied by a conclusory statement of ownership." *United States v. $25,982.28 in U.S. Currency*, No. 5:14-cv-150, 2015 WL 410590, at *1 (N.D. Ohio Jan. 29, 2015 (citing, among others, *United States v. Thirty-One Thousand Dollars in U.S. Currency*, No. 11-12116, 2012 WL 5343350, at *4 (E.D. Mich. Oct. 29, 2012)).  The district court there cited no Sixth Circuit precedent for this opinion, and we disagree with its analysis.  As we explained above, a statement of ownership duly verified pursuant to Rule G(5) is enough to satisfy the rule, and the verification requirement is what prevents the danger of false claims. *See One Men's Rolex Pearl Master Watch*, 357 F. App'x at 627.  As *One Men's Rolex Pearl Master Watch* notes, we strictly enforce the verification requirement—as well as the other statutory requirements—in order to deter false filings.  If Congress wishes to add an additional layer of protection to the statutory requirements by having claimants state their interest with specificity, it may.  But a panel of our court is not the proper body to do so.

The government also directs us to two out-of-circuit cases whose holdings support its position that an assertion of ownership or possession does not comply with Rule G(5)(a)(i)(B).  We reject the reasoning of both.  In *United States v. $104,250.00 in U.S. Currency*, 947 F. Supp.

---

[3] For the sake of completeness, we note that we have construed the government's motion to strike as one made "on the pleadings" pursuant to Rule G(8)(c)(ii)(B).  That subdivision of Rule G provides that a motion to strike "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence."  We do not address the "preponderance of the evidence" burden of proof here, because that standard is inapplicable in a review of the pleadings in which the claimant need only allege, rather than prove, the facts establishing his standing to pursue the claim. *Cf. Lujan*, 504 U.S. at 561–62; *$196,969 U.S. Currency*, 719 F.3d at 646.

2d 560, 565 (D. Md. 2013), the district court found that a claim was "too vague to make the threat of a perjury prosecution for filing a false claim a true deterrent" and that "the only way to guard against the possibility that the Claimant is making a false claim is to insist that she state the source of the defendant property in more detail, and that she do so under oath." *Id.* at 565; *see also United States v. $134,750 in U.S. Currency*, No. RWT 09-cv-1513, 2010 WL 1741359 (D. Md. Apr. 28, 2010). Put simply, this case reads more into Rule G than is actually there. As we have explained, Rule G does not support this analysis, for it dictates no special pleading rules unless the claimant is a bailee. We also see no reason why the threat of perjury is an insufficient deterrent against the filing of false claims, and because the drafters of Rule G did not include such a requirement, we will not import one here.

The government also cites *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 562–63 (8th Cir. 2014). There, the Eighth Circuit reviewed a district court's striking of both a claim and an amended claim. The Eighth Circuit affirmed the striking of the claim for failure to comply with Rule G(5) because it contained "blanket assertions that did not sufficiently identify [the claimant's] interest" in the funds to be forfeited. *Id.* at 563. The Eighth Circuit does not provide any persuasive analysis of Rule G(5) to demonstrate why this holding must be true. In addition, the district court in that case offered the claimant the opportunity to amend his claim at the time it struck the initial claim, and the motion to strike the claim came after the government served and the claimant answered special interrogatories. *See id.* at 561–62. This significant difference in procedural posture necessarily diminishes the persuasive effect that case has on our analysis of the case before us.

The government's reliance on *United States v. $57,888.00 in U.S. Currency*, No. 5:10-cv-2022, 2011 WL 2972106 (N.D. Ohio Jul. 21, 2011), is indicative of its problematic interpretation of Rule G. There, the defendant funds were seized from the claimant after the currency was found in his carry-on suitcase at the Akron/Canton airport. When asked about the money, however, the claimant "stated both verbally and in writing that he did not know anything about the money in the suitcase." *Id.* at *1. After the government filed its complaint, the claimant filed a claim stating that the money had been in his possession, and the government moved to strike for lack of statutory standing. *Id.* at *2. The district court found that the claimant lacked Article

III standing because the claim was one of "naked possession." *Id.* at *3. In the context of analyzing Article III standing, the district court looked for an explanation of "how [the claimant] came to possess the defendant currency in his carry-on suitcase," and, finding none, struck the claim for lack of standing.[4] *Id.* The government misreads this case. Although the government moved to strike for failure to comply with Rule G(5), the district court analyzed Article III standing alone. Its analysis concerning naked possession claims, therefore, should be cabined to Article III questions. In its brief here, the government cites the Article III analysis as if the district court had been analyzing the naked possession claim for purposes of Rule G statutory standing. But the fact remains that the two analyses are distinct. *Cf. United States v. $677,660.00 in U.S. Currency*, 513 F. App'x 531, 533 (6th Cir. 2013) ("Because [claimant] lacks Article III standing, we cannot reach her challenges to the government's forfeiture action and need not address whether she had statutory standing.").

Finally, we note our concern that the government's approach would turn the burden of proof in forfeiture actions on its head. Under the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), the government bears the burden of proving by a preponderance of evidence that the subject of a civil forfeiture action is, in fact, forfeitable. *See* 18 U.S.C. § 983(c); *see also United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 661–62 (6th Cir. 2003). Requiring a forfeiture claimant to explain the nature of his ownership at the pleading stage would be asking the claimant to satisfy the government's burden of proof, or at least go a long way toward doing so. *See Funds in the Amount of $239,400*, 795 F.3d at 645–46 (rejecting a reading of Rule G that would "require a claimant to demonstrate 'legitimate' ownership" because it would "nullify" a central purpose of CAFRA). Neither Article III nor Rule G demands this. Rule G(8)(c) provides that a motion to strike a claim "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Rule G(8)(c)(ii)(B). It is clear from both the language and the structure of that rule that a claimant responding to a

---

[4]The government's motion in that case sought to strike the claim for failure to comply with Rule G(5), as the motion at issue did here. The court seems to have sua sponte converted the motion from one about statutory standing to Article III standing, which appears to have been harmless since it was indeed a naked possession assertion.

motion for judgment on the pleadings has no evidentiary burden; rather, that burden arises only when the government moves for a determination of standing after a hearing or in summary judgment proceedings. Because the government's approach would require claimants to help prove the government's case against them, we reject it.

### D.        The Government's Policy Argument

Before concluding, we briefly address an argument that the government presents in favor of its position that an in rem forfeiture claim must state the claimant's interest in some detail. It asserts that its preferred pleading requirement would serve a "major purpose of promoting efficient and focused discovery." Gov't Br. at 18. In other words, it argues, "[r]equiring the claimant to make more than a bald assertion of ownership permits the United States to efficiently propound special interrogatories focused on the particulars of the claim rather than forcing the United States to embark on a discovery 'fishing expedition' through rounds of special interrogatories on this threshold issue." Gov't Br. at 18–19 (citing *$104,250*, 947 F. Supp. 2d at 565–66.). But Rule G provides no foundation for the government's request for a standard that will assist federal government lawyers in drafting the interrogatories necessary to probe the nature of a claimant's interest in the *res* subject to forfeiture, and we will not create such a wholly extra-textual rule. The government asserted a similar interest before the Seventh Circuit, and we fully join that court's reasoning in rejecting the government's proposal:

> The government argues that "forcing the claimant to spell out his interest in the property at the outset not only discourages false claims, but allows the parties to focus directly on the interest that is asserted in their discovery requests." This is an argument for amending the rule, which does not require "spelling out," rather than for judicial elaboration of it. Anyway we are given no grounds for thinking that a claimant's failure to particularize the nature of his claimed interest beyond what Rule G(5) requires burdens the government or the courts unduly. The government can depose the claimant or serve an interrogatory on him without leave of court, as expressly authorized by Rule G(6)(a). If the claimant is unresponsive, the government can move for dismissal of the claim and for entry of a judgment of forfeiture. And the judge can shortcut the entire process without impropriety by asking the claimant to clarify his claim.

*$196,969.00 U.S. Currency*, 719 F.3d at 647. Here, the district court agreed "with the government that it should not be put to the burden of propounding special interrogatories in this

situation because the claimants' assertions of ownership are too vague to facilitate the drafting of focused interrogatories." This was error. We have no doubt that the lawyers of the United States Attorney's Offices within the Sixth Circuit have the capacity to draft useful interrogatories that will either confirm a claimant's interest in the *res* or expose the futility of the claim. They do not need our hand on the scale.

## III. CONCLUSION

For the foregoing reasons, we find that the district court erred by dismissing Wiggins's and Allison's claims due to a lack of standing. We hold that strict compliance with Rule G does not require a claimant to state the additional facts that the government requests, where, as here, the claimants make a verified claim of ownership and not mere possession. Because Wiggins and Allison have Article III standing and have satisfied the requirements of Rule G, we return this case to the district court for further proceedings. We express no opinion on any other aspect of this case. Accordingly, we REVERSE the district court's order granting the government's motion to strike and REMAND the case for further proceedings.