NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0061n.06

Case No. 25-5611

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jan 28, 2026

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| 0.40401694 BITCOIN (BTC) SEIZED FROM BINANCE USER ID 36895141, et al., | ) | |
| Defendants, | ) | |
| | ) | |
| MARTINS IYERE, MOSES SOKALE, OLAWUMI STEPHEN ADEWALE, | ) | O P I N I O N |
| Interested Parties-Appellants. | ) | |
| | ) | |

Before: DAVIS, RITZ, and HERMANDORFER, Circuit Judges.

DAVIS, Circuit Judge. Martins Iyere, Moses Sokale, and Olawumi Stephen Adewale claim they are entitled to over $100,000 in cryptocurrency seized by the Federal Bureau of Investigation (FBI). The seizure stemmed from a fraud investigation that led agents to three cryptocurrency wallets that belonged to or were associated with Appellants. After seizing the funds in those wallets, the government filed this forfeiture action. The government then sent notice of the action to Iyere, Sokale, and Adewale, advising them of the deadline for filing a verified claim to establish their interest, if any, in the seized funds. None of the three filed a timely claim. But nearly a year after the government sent its notice, Iyere, Sokale, and Adewale filed a claim.

Finding the claim untimely and unverified, however, the district court struck the claim, denied Appellants' motion to extend the time to file the claim, and granted the government summary judgment. We perceive no error and AFFIRM.

**I.**

*A. Factual Background*

In February 2021, someone drained approximately $125,000 in cryptocurrency from the account of Matthew McNulty, a cryptocurrency investor and trader. A person posing as a community manager of a cryptocurrency exchange platform responded to McNulty's query for assistance with a "loss of value" he experienced during a cryptocurrency exchange. (Foreman Aff., R. 1-2, PageID 16 n.5). The fake community manager convinced McNulty to send security information necessary to access McNulty's cryptocurrency wallet. The person then used this information to steal the wallet's contents. McNulty had been scammed.

The FBI eventually stepped in to investigate. Its agents learned that McNulty had been sent to a website registered and hosted in Nigeria. And once the scammer(s) transferred McNulty's cryptocurrency from his wallet to a different wallet, they converted it to different types of cryptocurrencies. After diversifying their portfolio, they then spread the funds among multiple wallets on Binance, an online cryptocurrency exchange. Jordan Foreman, the special agent investigating the stolen cryptocurrency, discovered that those other wallets were associated with Iyere, Sokale, and Adewale. The government seized the funds in May 2022.

*B. Procedural Background*

On September 26, 2023, the government filed this *in rem* action seeking forfeiture of the funds seized from the three cryptocurrency wallets as proceeds of crimes. Specifically, the government sought to forfeit the funds under 18 U.S.C. § 981(a)(1)(A) and (C), alleging the funds

were traceable to wire fraud and money laundering in violation of 18 U.S.C. §§ 1343 and 1956 respectively. Around that same time, the government posted a notice of the complaint on its website. Then, on November 1, 2023, the government emailed notice of the complaint to Iyere, Sokale, and Adewale. The notice advised Appellants that if they had any interest in or claim against the seized funds, they had 35 days from November 1, 2023, to file a verified claim. This gave them until December 6, 2023, to file their claim.

Two days before the claim deadline, Appellants' attorney contacted the government to "discuss the matter." (Email Exchange, R. 24-1, PageID 115). Appellants did not, however, file a verified claim by the deadline or seek to extend the date before it expired. Nonetheless, the government responded on December 12, 2023, asking for an explanation of Appellants' interest in the seized funds. Appellants sent their combined explanation on December 15th and followed up with more emails to the government later in December 2023 and into 2024 that went largely unanswered.

In late September 2024 (ten months after the claim deadline), the government moved for summary judgment, arguing that the seized funds were subject to forfeiture and that no one had statutory standing to object. On October 23, 2024, Appellants jointly filed a claim as the "lawful owners" of the seized funds. (Claim, R. 14-1, PageID 68; *see* Answer, R. 13, PageID 62). They also filed three other relevant documents: (1) a motion to extend the time to file their claim and answer the complaint; (2) their answer; and (3) their response to the government's motion for summary judgment. Appellants themselves signed neither the "verified claim" nor the answer.

The government moved to strike Appellants' claim and answer pursuant to Federal Rules of Civil Procedure Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. R.") G(8)(c)(i)(A) because they were both untimely and the claim was unverified.

Appellants responded. And in late April 2025, the district court denied the motion to extend the time for Appellants to file their claim and answer. It also granted the government's motion to strike the claim and answer. Subsequently, the district court granted the government's motion for summary judgment. Appellants timely appealed.

**II.**

We review a district court's decision "strik[ing] a claim in an *in rem* forfeiture action for an abuse of discretion." *United States v. $31,000 in U.S. Currency*, 872 F.3d 342, 347 (6th Cir. 2017) (citation omitted). And when reviewing a district court's "determination of a claimant's standing to contest a federal forfeiture action," our review is *de novo*. *Id.* (citation omitted). Likewise, we apply the *de novo* standard when reviewing summary judgment in a forfeiture action. *United States v. $174,206 in U.S. Currency*, 320 F.3d 658, 660 (6th Cir. 2003). Summary judgment is proper when the movant establishes there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

**III.**

Appellants argue that the district court erred when it struck their claim based on a "procedural technicalit[y]." (Appellants' Br., ECF 11, 5). They say the district court should not have applied the procedural requirements "so rigidly" and, instead, should have afforded them the chance to cure the claim's deficiencies. (*Id.* at 8).

*A. Statutory Preconditions to Forfeiture Challenges*

The United States government may seek forfeiture of property involved in money laundering or wire fraud, as it did here. 18 U.S.C. § 981(a)(1)(A), (C); *see id.* §§ 1956(c)(7), 1961(1) (incorporating wire fraud under 18 U.S.C. § 1343 into § 981(a)(1)(C)). When a person "reasonably appears to be a potential claimant" of property that has been seized for forfeiture, the

government must send that person direct notice of the action and a copy of the complaint. Supp. R. G(4)(b)(i). Among other things, the direct notice must include "the date when the notice is sent" and "a deadline for filing a claim, at least 35 days after the notice is sent." Supp. R. G(4)(b)(ii)(A), (B). Here, the government's investigation revealed Appellants as potential claimants, so it sent them direct notices.[1]

Appellants therefore had to follow the strictures of Supplemental Rule G to contest the forfeiture of the cryptocurrency. *See* 18 U.S.C. § 983(a)(4)(A); *$31,000 in U.S. Currency*, 872 F.3d at 349. Supplemental Rule G allows individuals who claim an interest in any defendant property to "contest the forfeiture by filing a claim in the court where the action is pending." Supp. R. G(5)(a)(i). To comply with the rule, a claimant "must" file a verified claim "by the time stated in [the] direct notice." Supp. R. G(5)(a)(ii)(A). And the claimant must also file an answer to the complaint (or a Rule 12 motion) within 21 days of filing their claim. Supp. R. G(5)(b); Fed. R. Civ. P. 12.

As we have previously observed, the principles underlying claimants' need to demonstrate statutory standing to contest a forfeiture are well settled. *See $31,000 in U.S. Currency*, 872 F.3d at 344, 348–49. To establish statutory standing, a claimant must comply with Supplemental Rule G(5). *Id.* at 347, 349. Therefore, to establish an interest in the seized cryptocurrency wallets, Appellants were required to timely file a verified claim and answer to contest the forfeiture action. *See United States v. $525,695.24, Seized from JPMorgan Chase Bank Investment Account #xxxxxxxx*, 869 F.3d 429, 440 (6th Cir. 2017). A claim is "verified" when it is "signed by the

---

[1] The government also posted notice of this case on a government website, pursuant to Supplemental Rule G(4)(a)(iv)(C), on September 28, 2023. A person *not* sent direct notice but who receives notice by publication has 60 days from the first day of publication on an official government forfeiture website to file a claim. Supp. R. G(5)(a)(ii)(B). Here, that deadline was November 27, 2023. No such claim was filed.

*claimant* under penalty of perjury." Supp. R. G(5)(a)(i)(C) (emphasis added). The verification requirement is of particular importance because it helps prevent false claims in forfeiture actions. *$31,000 in U.S. Currency*, 872 F.3d at 347. Signing on an oath or by affirmation assures the court that the claimant has an interest in the defendant property sufficient to allow him to contest the forfeiture. *Id.* And to be timely, the claim must be filed by the time stated in the direct notice sent by the government (unless the court "for good cause sets a different time"). Supp. R. G(5)(a)(ii)(A). We have held that "[a] single deviation from the statute's requirements deprives a claimant of" the ability to challenge a forfeiture. *$31,000 in U.S. Currency*, 872 F.3d at 349. If a claimant fails to follow these requirements, the government can move to strike the verified claim or answer for failing to comply with Supplemental Rule G(5) or "because the claimant lacks standing." Supp. R. G(8)(c)(i).

Here, Appellants' claim was both late and unverified. The deadline to file their claim was December 6, 2023, but they did not file it until almost a year later. This failing alone is a sufficient basis to deprive them of statutory standing. *See $31,000 in U.S. Currency*, 872 F.3d at 349. Beyond being almost a year late, however, Appellants also failed to sign their claim—meaning their claim was not verified as required by Supplemental Rule G(5)(a)(i)(C). *See United States v. One Men's Rolex Pearl Master Watch*, 357 F. App'x 624, 627 (6th Cir. 2009). This, too, deprives them of the ability to contest the forfeiture. *Id.*

B. *Opportunity to Cure*

Appellants do not seriously contest these failings. Instead, they contend that they should have been afforded an "opportunity to cure." (Appellants' Br., ECF 11, 8). The district court concluded no such opportunity was warranted here.

District courts have discretion to extend the time or allow the late filing of a verified claim and answer. *United States v. Thirty-Five Firearms*, 123 F. App'x 204, 206 (6th Cir. 2005);[2] *see* Supp. R. G(8)(c) (2006 Advisory Committee Notes) ("As with other pleadings, the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under [Federal Rule of Civil Procedure] 15."). Supplemental Rule G(5)(a)(ii) provides that the district court for good cause may set a different filing deadline. Here, the district court found Appellants' reasons lacking. And we discern no abuse of that discretion.

In *Thirty-Five Firearms*, we outlined several helpful (but non-exhaustive and non-mandatory) factors courts may consider when deciding whether to excuse a party's non-compliance with Supplemental Rule G. *See* 123 F. App'x at 207. Those factors include: (1) when the claimants "became aware of the seizures"; (2) the reason or reasons for the delay in filing the claim; (3) "whether the government encouraged the delay"; (4) whether the potential claimant "advised the court and the government of their interest in the property before the claim deadline"; and (5) "whether the government would be prejudiced by the late filing." *Id. But see United States v. $22,050 U.S. Currency*, 595 F.3d 318, 323 (6th Cir. 2010) (declining to apply *Thirty-Five Firearms* in case involving untimely but otherwise compliant claim and answer and district court's denial of a Rule 55(c) motion to set aside a default). The main function of these factors is to determine whether the claimant has a good reason for filing a delayed claim and whether the government will be prejudiced by a late filing. *See Thirty-Five Firearms*, 123 F. App'x at 207.

---

[2] "[T]he *in rem* forfeiture Supplemental Rules were renumbered in 2006. The provisions that are now located in Rule G were previously located in Rule C(6). Thus, the older cases discuss adherence to Rule C(6)." *United States v. One 2011 Porsche Panamera*, 684 F. App'x 501, 506 n.4 (6th Cir. 2017) (quoting *United States v. $22,050 U.S. Currency*, 595 F.3d 318, 322 n.4 (6th Cir. 2010)).

The district court thoughtfully considered these factors in denying Appellants' motion to extend, and the government urges us to affirm its analysis.

Although these five factors "hardly establish[]" a test for "use in these kinds of cases," we see no abuse of discretion by the district court in assessing them here. *$22,050 U.S. Currency*, 595 F.3d at 323. *First*, Appellants did not file their claim and answer until 357 days after receiving notice of the forfeiture action. *Second*, Appellants never offered an acceptable excuse for their late filing. As the district court recognized, Supplemental Rule G's requirements are "relatively plain," such that competent counsel used to "reading and complying with procedural requirements" would know the importance of strict compliance with the Rule. *United States v. $5,730 in U.S. Currency*, 109 F. App'x 712, 714 (6th Cir. 2004). And even though Appellants contacted the government two days before the deadline, they offer no explanation for failing to file a claim and answer once the December 6th deadline arrived and they had not yet heard from the government.

*Third*, Appellants asserted below that the delay in filing their claim and answer arose after the government's attorney "indicat[ed] that further informal communications would suffice." (Mem. Opposing M. to Strike, R. 24, PageID 105). But nothing in the record supports this assertion. Even the government's December 12, 2023, e-mail correspondence—which came *after* the deadline for a response—simply requested an explanation of the claimants' interest in the seized funds. At most, the government's response merely seeks additional information from a potential claimant and, as the district court found, suggests a potential "openness to negotiate." (Order on M. to Strike and M. to Extend, R. 25, PageID 147).

*Fourth*, though we agree with the district court's finding that Appellants advised the government of their interest in the seized cryptocurrency, we note that they did not advise the court. *See Thirty-Five Firearms*, 123 F. App'x at 207 (including whether claimants advised court

and government in list of relevant considerations for determining if extension warranted). So, in our view, this factor is neutral. And *fifth*, we see no clear error in the district court's finding that the government would be prejudiced by a late-filed claim and answer because of the volatility of cryptocurrency and the great risk the seized assets "could depreciate or even become worthless." (Order on M. to Strike and M. to Extend, R. 25, PageID 148). Indeed, the court relied in part on Appellants' own representations about such volatility. Thus, we conclude that the district court did not abuse its discretion by declining to grant Appellants an extension to file their claim and answer and striking the untimely filings. As a result, Appellants lack statutory standing to challenge the forfeiture.

Finally, without the necessary statutory standing, Appellants cannot contest the grant of summary judgment, discovery issues, or raise other claims about the propriety of the forfeiture. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988) ("The rule that only parties to a lawsuit, *or those that properly become parties*, may appeal an adverse judgment, is well settled." (emphasis added)); *United States v. 1308 Selby Lane*, 675 F. App'x 546, 547–48 (6th Cir. 2017) (dismissing appeal where county had not "properly become a party to th[e] lawsuit" and recognizing that it "could have intervened" by filing a verified claim under the Supplemental Rules). We therefore decline to address Appellants' remaining arguments.

**IV.**

For the foregoing reasons, we AFFIRM.